Oscar STILLEY, *Petitioner v.* Sharon PRIEST,
In Her Official Capacity as Secretary of State
of the State of Arkansas, *Respondent*;
Arkansas Casino Corporation, *Intervenor*

00-135                                              16 S.W.3d 251

Supreme Court of Arkansas
Opinion delivered May 18, 2000

---

330

*Petitioner,* pro se.

*Mark Pryor,* Att'y Gen., by: *Dennis R. Hansen,* Ass't Att'y Gen.; *Tim Humphries,* Counsel, for respondent.

*Buchholz & Sassin, P.L.L.C.,* by: *Robert W. Buchholz,* for intervenor.

*Friday, Eldredge & Clark,* by: *Elizabeth Robben Murray* and *Robert S. Shafer,* for *amicus curiae* Bobby Roberts, Individually and On Behalf of Arkansans to Protect Police, Libraries, Education & Services (APPLES).

R OBERT L. BROWN, Justice. This case involves an original action petition filed by petitioner Oscar Stilley pursuant to Amendment 7 of the Arkansas Constitution and Act 877 of 1999. The petition deals with a proposed amendment to the Arkansas Constitution to authorize lotteries, raffles, and bingo throughout the state as well as casino gambling at six sites in the state (hereinafter the "Gaming Amendment"). On August 30, 1999, the Attorney General issued an opinion approving, with minor corrections, the text of the popular name and ballot title for the amendment submitted by intervenor Arkansas Casino Corporation. On August 31, 1999, respondent Sharon Priest, as Secretary of State also approved and certified as sufficient the popular name and ballot title for the ballot.

On November 29, 1999, petitioner Oscar Stilley filed an original action petition in this court and requested a declaratory judgment on the legal sufficiency of the popular name and ballot title of the Gaming Amendment under Amendment 7 to the Arkansas Constitution and Act 877 of 1999, now codified at Ark. Code Ann. § 7-9-501 through 506 (Repl. 2000). This court dismissed Stilley's action in *Stilley v. Priest,* 340 Ark. 259, 12 S.W.3d 189 (2000) (*per curiam*), on the basis that Stilley did not follow the correct procedure as set out in Act 877. We pointed out that Stilley had never filed a petition with the Secretary of State, questioning the legal sufficiency of the initiative petition. We noted that under Act 877, only

after the Secretary of State has made her determination following a petition questioning an initiative's legal sufficiency, can this court review that decision. In our *per curiam* opinion, we also pointed out that an issue exists concerning the constitutionality of Act 877 in light of *Finn v. McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990).

Following our dismissal of his petition, Stilley petitioned the Secretary of State and questioned the legal sufficiency of the initiative petition. On January 26, 2000, the Secretary of State issued a Declaration stating that she believed the popular name and ballot title were fair and accurate and that the measure, if subsequently approved by the electorate, would be facially valid. Stilley then filed his original action petition in this court pursuant to Amendment 7 and Act 877 for a review of the decision by the Secretary of State.

## I. Constitutionality of Act 877

For his first point, Stilley asks this court to uphold the validity of Act 877 of 1999. Act 877 provides that any taxpayer and voter can petition the Secretary of State for a determination of the legal sufficiency of a proposed initiative. Ark. Code Ann. § 7-9-503(a)(1) (Repl. 2000). The Secretary of State shall then declare, after consulting with the Attorney General, whether the popular name or ballot title are fair and complete and the proposed measure is valid under the state and federal constitutions and state law. Ark. Code Ann. § 7-9-503(b) (Repl. 2000). If the Secretary of State declares the initiative to be legally insufficient, a time for curing by the sponsors is allowed. Ark. Code Ann. § 7-9-504 (Repl. 2000). A right of review of the Secretary of State's decision by this court is provided. Ark. Code Ann. § 7-9-505 (Repl. 2000).

Stilley initially asks this court to distinguish the instant case from the case of *Finn v. McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990), where this court held that portions of Act 280 of 1989 were unconstitutional under Amendment 7. In *Finn*, an original action had been filed in this court to determine whether a proposed lottery initiative was insufficient due to misleading text in the ballot title and invalid signatures. The action was filed after certification of the initiative petition by the Secretary of State but more than forty-five days after publication of the proposed amendment. At issue in that case was Act 280 of 1989, which required in part that

petitions contesting the terms of a ballot title must be filed within forty-five days of publication of the proposed amendment or they would be untimely. This court struck down the forty-five-day requirement in Act 280 as a limit on the provisions of Amendment 7 and as an expansion of this court's jurisdiction to review proposed initiatives.

Stilley in his brief distinguishes the issues surrounding Act 280 in *Finn* from the issues of Act 877 in the case at hand. He maintains that Act 280 cut off the rights of challengers after a certain time period, where Act 877 does not. In the alternative, Stilley argues that the *Finn* case was wrongly decided and should be overruled.

The respondent, Sharon Priest as Secretary of State, and the intervenor, Arkansas Casino Corporation, weigh in on this latter point and urge this court to overrule the *Finn* decision. Priest argues that Act 877 merely permits a challenge to the text of an initiative petition at an earlier stage, but that it does not curtail the right of a challenger to contest the initiative's signatures at a later date. Amendment 7 does not prohibit an early review, says Priest. She argues that instead Amendment 7 specifically contemplates laws by the General Assembly to facilitate its operation.

The Casino Corporation agrees with Priest and claims that the decision in *Finn* that an initiative petition must have signatures is based on one case — *Scott v. McCuen*, 289 Ark. 41, 709 S.W.2d 77 (1986). The Casino Corporation points out that in *Scott*, we wrote: "Our jurisdiction attaches only after the petition is declared sufficient and that determination must be of the sufficiency of *both the title and the signatures*." 289 Ark. at 45, 709 S.W.2d at 79 (emphasis added). No case authority accompanied this statement in *Scott*, according to the Casino Corporation. Furthermore, the constitutionality of a state statute was not at issue in that case.

We begin by looking at *Scott v. McCuen, supra*, upon which *Finn* was based. In *Scott*, the Secretary of State had certified the text of a ballot title before an initiative petition had been submitted to him and prior to the collection of signatures. He had done so without specific legislative authority from the General Assembly. We held that this was contrary to Amendment 7 and that in the past certification by the Secretary of State had only occurred following submission of the initiative petition with signatures. We held that

only after an initiative petition had been certified both as to title and signatures did this court have jurisdiction to review it under Amendment 7.

Priest contends that the statement in *Scott* concerning jurisdiction is mere *dictum*, but we disagree. Rather, the statement goes to the heart of this court's jurisdiction in original actions on initiative petitions and limits that jurisdiction prior to the time that signatures have been collected. Furthermore, in *Finn* we concluded that our review before certification by the Secretary of State as to popular name, ballot title, *and signatures* constituted an unlawful and unconstitutional expansion of this court's jurisdiction. This blanket statement relating to the necessity for signatures before this court has jurisdiction to review an initiative petition places both *Scott* and *Finn* directly at odds with Act 877.

■ We have come to the conclusion that both *Scott v. McCuen, supra* and *Finn v. McCuen, supra*, were wrongly decided with respect to the jurisdiction of this court. We first observe that while Amendment 7 does contemplate filing the initiative petition with the requisite signatures with the Secretary of State for a sufficiency determination, at no point does it preclude an earlier review of the text of the popular name and ballot title or the validity of the proposed amendment. On the contrary, Amendment 7 specifically provides that "laws may be enacted to facilitate its operation." An early resolution of a contest to the content of a popular name and ballot title and the validity of the initiative would certainly facilitate the process for legislative enactments by the people.

In this regard, there is clear precedent for approving the constitutionality of a legislative act requiring early review of the text of an initiative petition prior to the collection of signatures. *See Washburn v. Hall*, 225 Ark. 868, 286 S.W.2d 494 (1956). In *Washburn*, the issue was whether this court should compel the Secretary of State to certify an initiative petition when the sponsors had failed to obtain the prior approval of the Attorney General of the text of the popular name, ballot title, and amendment. Amendment 7 does not provide for prior approval by the Attorney General. Act 195 of 1943, now codified at Ark. Code Ann. § 7-9-107(a) through (e) (Repl. 2000), however, provided for the submission of a draft of an initiative petition to the Attorney General for his review, approval, or amendment prior to collecting signatures. Act 195 further

provided that should the Attorney General fail to act and if the sponsors felt aggrieved by his actions, they could petition this court for proper relief. *See* Ark. Code Ann. § 7-9-107(d) (Repl. 2000). We refused to compel certification and said:

> Act No. 195 of 1943, Ark. Stats. 2-208, is no unwarranted restriction on Amendment No. 7. Obviously, the Legislature considered that in signing a referendum or initiative petition the signer should have the benefit of a popular name and ballot title that would give as much information about the proposed act as is possible to give by such means. It is apparent that the Legislature considered that the safer method would be to first submit the proposed popular name and ballot title to the Attorney General of the State for his approval and, if he did not approve that which was submitted, he should substitute and certify more suitable ones. This statute in no way curtails the operation of Amendment No. 7 but is in aid of the amendment and insures the giving to the signer of the petition as much information as is possible and practicable with regard to what he is being asked to sign. Here, the Attorney General was not asked to approve a popular name or a ballot title. Nothing was pointed out to him as a popular name or ballot title which the circulators of the petition intended to use as such.

*Washburn*, 225 Ark. at 871-872, 286 S.W.2d at 497.

█ It is true that our decision in *Washburn v. Hall, supra*, was not couched in terms of the jurisdiction of this court to review. Yet, the decision unmistakably stands for the proposition that early review of the petition's text by the Attorney General and by this court did not impede the Amendment 7 process. Indeed, it facilitated it. Similarly, we do not believe that an earlier review of the text of the initiative by the Secretary of State and this court pursuant to Act 877 impedes a later certification of a petition with signatures by the Secretary of State. On the contrary, an early determination of the initiative's text would have the salutary effect of facilitating a smoother operation of Amendment 7. That amendment, after all, has as its ultimate purpose the establishment of a procedure by which the people can adopt legislative measures. Any impediment to that process caused by a late review of the initiative's text certainly works against that laudable goal.

We are mindful that in the past ten years at least seven measures have been stricken from the ballot at the eleventh hour before the November general election owing to a deficiency in the text of the

ballot title. *See Scott v. Priest,* 326 Ark. 328, 932 S.W.2d 746 (October 21,1996) (struck ballot title to amendment that would allow casino gambling and legalize a lottery, charitable raffles, and bingo games); *Crochet v. Priest,* 326 Ark. 338, 931 S.W.2d 128 (October 21, 1996) (struck ballot title to amendment that would authorize lottery ticket games, charitable bingo, raffles, and video terminal games); *Parker v. Priest,* 326 Ark. 386, 931 S.W.2d 108 (October 21, 1996) (struck ballot title to amendment that would authorize a state lottery and legalize bingo, raffles, and casino gambling); *Christian Civic Action Comm. v. McCuen,* 318 Ark. 241, 884 S.W.2d 605 (October 14, 1994) (struck ballot title to amendment that would authorize a state lottery, nonprofit bingo, nonprofit raffles, and casino-style gambling); *Bailey v. McCuen,* 318 Ark. 277, 884 S.W.2d 938 (October 14, 1994) (struck ballot title to amendment that would restructure the workers' compensation commission and revise workers' compensation law); *Page v. McCuen,* 318 Ark. 342, 884 S.W.2d 951 (October 20, 1994) (struck ballot title to amendment that would authorize casino gambling).

As a result, this court urged the enactment of a procedure that would ameliorate the situation and provide some mechanism for an earlier review. *See Page v. McCuen, supra.* In *Page,* we said:

> We commend the General Assembly's past effort in attempting to establish reasonable statutory timetables to implement initiative and referendum measures under Amendment 7. We respectfully ask its further consideration and action and encourage the General Assembly to make another attempt to establish an initiative and referendum procedure that will permit early resolution of such issues. Until appropriate action is taken to correct the problems attendant to proposals submitted under Amendment 7, citizens can continue to expect measures to be removed from the ballot immediately prior to the election. This court does not enjoy being in the "last-minute" position of review. The people of Arkansas deserve an initiative and referendum procedure which allows them the confidence that measures, after having been adequately reviewed, will not be removed from the ballot. The sponsors of initiative proposals should also be assured their ballot titles and proposed measures meet required guidelines and rules before they spend their time, energy and monies in getting their proposal before the voters.

318 Ark. at 347-348, 884 S.W.2d at 954-955. *See also Scott v. Priest, supra* (same language recited by this court).

It may well be that our decision today will result in two reviews of some petitions, the first dealing with the text of the popular name and ballot title and the validity of the proposed amendment, and the second occurring after certification of the petition's signatures. Having two sufficiency determinations on those two matters has not been that unusual in recent years. Under current procedures, we often have scheduled a master to hear the issue of signature deficiencies, while we simultaneously reviewed textual problems. *See, e.g., Roberts v. Priest*, 334 Ark. 503, 975 S.W.2d 850 (October 15, 1998) (challenge to both the sufficiency of the signatures and the ballot title text); *Scott v. Priest*, 326 Ark. 328, 932 S.W.2d 746 (1996) (ballot title held insufficient); *Scott v. Priest*, 326 Ark. 466, 932 S.W.2d 751 (1996) (challenge to sufficiency of signatures held moot in light of decision on ballot title).

The dissent argues that Amendment 7 mandates only one review of the legal sufficiency of the initiative petition by the Secretary of State and by this court and that this review occurs only after the collection of signatures. The dissent further argues that "petition" as used in Amendment 7 refers only to a document that contains the proposed initiative and the required signatures. We disagree for the reasons already stated in this opinion. Amendment 7 does provide for a determination of the legal sufficiency of the signatures by the Secretary of State subject to this court's review but at no point does it foreclose a prior review of the legal sufficiency of the proposed initiative's text, including the popular name and ballot title. Moreover, Amendment 7 clearly uses the term "petition" at one point to refer to the proposed initiative prior to filing when it states that a "petition" may be circulated in "parts" for the gathering of signatures. The dissent acknowledges this sentence in Amendment 7 in seeming contradiction to the dissent's claim that "petition" as used in the amendment always refers to the document at time of filing with the collected signatures. Amendment 7 simply is not at odds with Act 877.

In summary, we conclude that Act 877 of 1999 does not run afoul of the provisions of Amendment 7 to the Arkansas Constitution. We overrule *Finn v. McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990), and *Scott v. McCuen*, 289 Ark. 41, 709 S.W.2d 77 (1986), to the extent that they prevent a review of the text of a popular name and ballot title and the validity of the proposed measure prefatory to the gathering of signatures.

*II. Sufficiency of the Ballot Title*

We turn then to the issue of whether the popular name and ballot title for the proposed amendment are sufficient. We conclude that they are.

Stilley only argues for one change in the ballot title in his brief. That change concerns the Arkansas Educational Trust Fund, which will receive money from gaming revenues under the proposed amendment to be used as grants to finance a college education for students who qualify. That requested change is best illustrated by the following:

> ESTABLISHING THE ARKANSAS EDUCATIONAL TRUST FUND, REGULATED AND ADMINISTERED BY THE DEPARTMENT OF HIGHER EDUCATION, TO PROVIDE GRANTS TO QUALIFIED ~~HIGH SCHOOL~~ GRADUATES OF *ACCREDITED HIGH SCHOOLS* FOR POST-SECONDARY EDUCATION;

The marked through language should be replaced by the underlined language, according to Stilley. This, he maintains, is needed because the ballot title misleads by not stating that under the Gaming Amendment some of the least fortunate Arkansas students who do not attend accredited high schools will be excluded from trust fund grants.

■■ We disagree that a specific reference to *accredited* high schools is required. We have held that a ballot title must be free from a misleading tendency. *Bailey v. McCuen, supra; Plugge v. McCuen,* 310 Ark. 654, 841 S.W.2d 139 (1992). We have further held that a ballot title must be intelligible, honest, and impartial so as to inform voters with such clarity that they can cast their ballots with a fair understanding of the issues presented. *Parker v. Priest, supra; Bailey v. McCuen, supra.* If information is omitted from the ballot title which is an essential fact which would give the voter serious ground for reflection, it must be disclosed. *Parker v. Priest, supra; Bailey v. McCuen, supra.* Finally, we have held that we are liberal in construing Amendment 7 and in determining the sufficiency of a ballot title. *Bailey v. McCuen, supra; Porter v. McCuen,* 310 Ark. 562, 839 S.W.2d 512 (1992).

■ Under these standards, we do not agree that Stilley's challenge is of such significance for us to deem the ballot title insufficient. Certainly, "*qualified* high school graduate" tells the voter that certain qualifications must be met. Thus, the voter is put on notice that there may be one or more factors for determining eligibility. In short, the ballot title is sufficient to give the voter an intelligible idea of what is involved. *See Plugge v. McCuen, supra; Bailey v. McCuen, supra.* Because Stilley apparently has abandoned two other grounds for insufficiency raised in his petition — funding for the Arkansas Gaming Commission and the tendency for a monopoly — we need not consider them.

■ A challenge to the sufficiency of the text of a proposed amendment under Act 877 is obviously a matter of first impression for this court. At oral argument, questions were asked concerning whether Act 877 might lead to "friendly" actions to garner this court's approval of the text of proposed amendments and whether subsequent petitions concerning sufficiency of the text could be filed on other grounds, perhaps after certification of the signatures by the Secretary of State. Those are not issues raised by the parties in the instant case, and we decline to address them. Suffice it to say that Stilley, in his petition, has mounted a bonafide challenge to the text of the Gaming Amendment under Act 877, and we find no merit to his challenge.

### III. Miscellaneous Points

Because we do not conclude that a change in the ballot title is required, we need not address Stilley's arguments on curing the ballot title and the Casino Corporation's concern about previously collected signatures. Both matters are moot.

■ Nor should we consider Stilley's points concerning the extent of fraud necessary to void a ballot title and the elimination of length as a criterion in deciding ballot title sufficiency. Neither issue is raised in connection with the ballot title in the instant case, and this court has been constant in its resolve against issuing advisory opinions. *Central Emergency Medical Services, Inc. v. State,* 332 Ark. 592, 966 S.W.2d 257 (1998). Under this reasoning, we also decline to give "guidance" to Stilley on a time line for reviewing initiative petitions.

Petition denied.

IMBER and THORNTON, JJ., dissent.

## ADDENDUM

### Popular Name

AN AMENDMENT TO ESTABLISH A STATE LOTTERY; TO PERMIT CHARITABLE BINGO GAMES AND RAFFLES; TO ALLOW ARKANSAS CASINO CORPORATION TO OWN AND OPERATE SIX CASINO GAMBLING ESTABLISH-MENTS ONE EACH IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN AND BOONE COUNTIES; AND TO ESTABLISH THE ARKANSAS EDUCATIONAL TRUST FUND AND THE ARKANSAS GAMING COMMISSION.

### BALLOT TITLE

AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO: 1) ESTABLISH A STATE-RUN LOTTERY, TO BE OPERATED AND REGULATED BY THE ARKANSAS GAM-ING COMMISSION; 2) AUTHORIZE CHARITABLE BINGO AND RAFFLES IN ARKANSAS AS REGULATED BY THE ARKANSAS GAMING COMMISSION; AND 3) IMMEDI-ATELY AUTHORIZE SIX CASINO GAMBLING ESTAB-LISHMENTS, TO BE OWNED AND OPERATED BY "ARKANSAS CASINO CORPORATION" (A PRIVATE FOR-PROFIT CORPORATION), ONE EACH TO BE LOCATED IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN AND BOONE COUNTIES, THE OPERA-TIONS OF WHICH SHALL BE AUDITED BY THE ARKAN-SAS GAMING COMMISSION FOR THE SOLE PURPOSE OF INSURING THAT CASINO TAXES DUE TO THE STATE ARE PAID, BUT WHICH SHALL NOT OTHERWISE BE REGULATED BY THE GAMING COMMISSION; REQUIRING THE GENERAL ASSEMBLY TO ENACT LEG-ISLATION SO THAT THE STATE LOTTERY AND CHARI-TABLE BINGO AND RAFFLES MAY BEGIN AT THE EAR-LIEST POSSIBLE TIME, BUT PROHIBITING THE GENERAL ASSEMBLY FROM ENACTING ANY LEGISLA-TION REGARDING CASINO GAMING; PROHIBITING CASINO GAMING IN ANY OTHER COUNTY OR AT ANY

OTHER THAN THE LOCATIONS OPERATED BY ARKANSAS CASINO CORPORATION; PROHIBITING PERSONS UNDER THE AGE OF 21 FROM PURCHASING LOTTERY TICKETS OR PARTICIPATING IN BINGO, RAFFLES OR CASINO GAMING; REQUIRING AT LEAST 50% OF STATE LOTTERY REVENUE TO BE DISTRIBUTED AS PRIZES, AT LEAST 45% OF LOTTERY REVENUE TO BE PAID TO THE ARKANSAS EDUCATIONAL TRUST FUND AND NO MORE THAN 5% FOR THE EXPENSES OF THE LOTTERY; REQUIRING PAYMENT OF A 15% TAX ON THE "NET GAMING REVENUE" (AS DEFINED) OF ANY CASINO, TO BE ALLOCATED AS FOLLOWS: 80% TO THE STATE'S GENERAL FUND FOR THE PURPOSE OF REDUCING OR ELIMINATING THE GROSS RECEIPTS TAX ON FOOD PURCHASED IN A RETAIL FOOD STORE, WITH ANY EXCESS RETURNED TO THE GENERAL FUND, 10% TO THE ARKANSAS EDUCATIONAL TRUST FUND; 5% OF THE TAX OF ONE CASINO TO THE COUNTY IN WHICH THAT CASINO IS LOCATED (IF THE CASINO IS IN A CITY LIMITS THEN THIS REVENUE SHALL BE DIVIDED EQUALLY BETWEEN THE COUNTY AND THE CITY), 1% TO THE ARKANSAS COMPULSIVE GAMBLING FOUNDATION FOR THE TREATMENT AND PREVENTION OF GAMBLING ADDICTION; 4% TO THE STATE'S GENERAL FUND FOR THE OPERATIONAL COSTS OF THE ARKANSAS GAMING COMMISSION; PROHIBITING THE GENERAL ASSEMBLY FROM REDUCING LOCAL OR STATE FUNDING BECAUSE OF CASINO TAX REVENUE; PROHIBITING ANY OTHER STATE OR LOCAL TAXES, FEES OR ASSESSMENTS ON THE FURNITURE, FIXTURES, EQUIPMENT, PROPERTY, BUSINESS OPERATIONS, GROSS REVENUES, NET GAMING REVENUES OR INCOME OF ARKANSAS CASINO CORPORATION FROM OR USED IN CASINO GAMING; ESTABLISHING THE ARKANSAS EDUCATIONAL TRUST FUND, ALLOCATED AND ADMINISTERED BY THE DEPARTMENT OF EDUCATION, TO PROVIDE GRANTS TO QUALIFIED HIGH SCHOOL GRADUATES FOR POST-SECONDARY EDUCATION; DEFINING POST-SECONDARY EDUCATION AS THE PURSUIT OF AN UNDERGRADUATE DEGREE AT A PUBLIC OR PRIVATE UNI-

VERSITY, COLLEGE, COMMUNITY COLLEGE OR A DEGREE FROM A VOCATIONAL-TECHNICAL SCHOOL; REQUIRING NOT LESS THAN 24% OF THE EDUCATIONAL TRUST FUND TO BE USED TO EXPAND PRE-KINDERGARTEN EDUCATIONAL PROGRAMS AND TUTORIAL PROGRAMS FOR PRIMARY AND SECONDARY STUDENTS; CREATING THE ARKANSAS GAMING COMMISSION, WHOSE MEMBERS SHALL BE APPOINTED BY THE GOVERNOR WITH THE ADVICE AND CONSENT OF THE SENATE, WHO SHALL: 1) ESTABLISH AND OPERATE THE STATE LOTTERY; 2) LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES; AND 3) AUDIT THE OPERATIONS OF THE CASINOS FOR THE SOLE PURPOSE OF INSURING THAT ALL CASINO TAXES DUE TO THE STATE ARE PAID; PROVIDING FOR JUDICIAL REVIEW OF THE COMMISSION'S DECISIONS OR ACTIONS; ALLOWING A CASINO TO OPERATE ANY DAY FOR ANY PORTION OF THE DAY; ALLOWING THE SELLING OR FREE FURNISHING OF ALCOHOLIC BEVERAGES IN CASINOS DURING ALL HOURS THEY OPERATE BUT OTHERWISE REQUIRING ADHERENCE TO ALL ALCOHOLIC BEVERAGE CONTROL BOARD REGULATIONS; PERMITTING THE SHIPMENT OF GAMBLING DEVICES INTO AUTHORIZED COUNTIES FOR PURPOSES OF FEDERAL LAW; RENDERING THE PROVISIONS OF THE AMENDMENT SEVERABLE; DECLARING INAPPLICABLE ALL CONSTITUTIONAL PROVISIONS AND LAWS TO THE EXTENT THEY CONFLICT WITH THE AMENDMENT; AND DECLARING THE AMENDMENT OPERATIVE UPON PASSAGE.

ANNABELLE CLINTON IMBER, Justice, dissenting. The majority correctly concludes that our decisions in *Finn v. McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990), and *Scott v. McCuen*, 289 Ark. 41, 709 S.W.2d 77 (1986), are directly at odds with Act 877 of 1999, now codified at Ark. Code Ann. §§ 7-9-501—506 (Repl. 2000). Act 877 of 1999 provides for this court to review a "legal sufficiency" declaration by the secretary of state with respect to a proposed petition which has not been certified by the secretary of state as having a sufficient number of signatures to be placed on

the ballot. We clearly held in *Finn v. McCuen, supra,* that "any statute which purports to confer on us the power to review an initiative petition which has not been certified as to the popular name, ballot title, and *signatures* constitutes an unlawful and unconstitutional expansion of our jurisdiction." *Id.* at 424, 798 S.W.2d at 37. (Emphasis added). The majority overcomes precedent by summarily overruling *Finn v. McCuen, supra,* and *Scott v. McCuen, supra,* and then declares that Act 877 of 1999 "does not run afoul of the provisions of Amendment 7 to the Arkansas Constitution." In so doing, the majority makes only one slight reference to the actual provisions of Amendment 7.

This court's original jurisdiction must be invoked pursuant to Amendment 7. *See Berry v. Hall,* 232 Ark. 648, 339 S.W.2d 433 (1960); *Hargis v. Hall,* 196 Ark. 878, 120 S.W.2d 335 (1938); *Rambo v. Hall,* 195 Ark. 502, 112 S.W.2d 951 (1938). Our jurisdiction to entertain such original actions cannot be enlarged by the legislature. *American Party of Arkansas v. Brandon,* 253 Ark. 123, 484 S.W.2d 881 (1972). Amendment 7 to the Arkansas Constitution provides in pertinent part:

### STATE WIDE PETITIONS

**Initiative** — The first power reserved by the people is the initiative. Eight per cent of the legal voters may propose any law and ten per cent may propose a Constitutional Amendment by initiative petition, and every such petition shall include the text of the measure so proposed. Initiative *petitions* for State-wide measures *shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon . . .*

\* \* \* \*

### THE PETITION

**Title** — *At the time of filing petitions the exact title* to be used on the ballot *shall* by the petitioner *be submitted with the petition* and on State-wide measures, shall be submitted to the State Board of Election Commissioners, who shall certify such title to the Secretary of State, to be placed upon the ballot . . .

\* \* \* \*

**Verification** — Only legal votes shall be counted upon petitions. *Petitions may be circulated and presented in parts, but each part of any petition shall have attached thereto, the affidavit* of the persons

circulating the same, that all signatures thereon were made in the presence of the affiant, and that to the best of the affiant's knowledge and belief each signature is genuine, and that the person signing is a legal voter . . .

\* \* \* \*

**Sufficiency** — *The sufficiency of all State-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes . . .*

\* \* \* \*

**Self-Executing** — This section shall be self-executing, and all its provisions shall be treated as *mandatory*, but laws may be enacted to *facilitate* its operation.

Ark. Const. amend. 7 (emphasis added).

The majority opinion acknowledges that Amendment 7 "does contemplate filing the initiative petition with the requisite signatures with the Secretary of State for a sufficiency determination," but then it proceeds to suggest that Amendment 7 does not preclude "an earlier review of the text of the popular name and ballot title or the validity of the proposed amendment." This suggestion is, however, not borne out by the provisions of Amendment 7. The secretary of state's authority to act under Amendment 7 is not triggered until a statewide initiative petition is "filed with the Secretary of State not less that four months before the election at which [it is] to be voted upon . . . ." Ark. Const. amend. 7. Moreover, "at the time of filing" the ballot title must be submitted with the petition. *Id.* Our jurisdiction to entertain an original action under Amendment 7 does not arise until the secretary of state decides on "[t]he sufficiency of all State-wide petitions." *Id.*

In upholding this court's jurisdiction to review the secretary of state's declaration on the "legal sufficiency" of a measure pursuant to Act 877 of 1999, the majority assumes that the word "petition" as used in Amendment 7 may be interpreted to mean merely the text of the proposed measure, and the proposed popular name and ballot title. Such an interpretation makes absolutely no sense because it would mean that "petitions" without the required number of signatures could be filed within four months of an election.

Consequently, during the four months leading up to the election, the secretary of state might be required to decide, and this court might be asked to review, the "legal sufficiency" of measures that would probably not be on the ballot for that election. Such decisions would be purely advisory unless they were deemed binding beyond the election. In that event, the time fixed by Amendment 7 for filing initiative petitions would be rendered meaningless; that is, the gathering and filing of the required number of signatures for a "petition" already determined to be "legally sufficient" by the secretary of state and this court could extend over the course of several years. In short, the majority's assumption regarding what is meant by the word "petition" in Amendment 7 is totally at odds with the amendment's fundamental framework.[1]

The word "petition" as used in Amendment 7 should be interpreted consistently throughout the amendment, whether it be in the context of the amendment's filing requirements or in the context of sufficiency decisions by the secretary of state and this court. Such a consistent interpretation can only be achieved when a "petition" includes the text of the proposed measure and the proposed popular name and ballot title, *and* the required number of signatures. Our case law supports this view. In *Dixon v. Hall*, 210 Ark. 891, 198 S.W.2d 1002 (1946), we stated:

> Our view is that, under any rational construction, it was intended that a petition be filed within the time fixed by Amendment No. 7. *To be a petition it must, prima facie, contain at the time of filing the required number of signatures.* Correction and amendment go to form and error, rather than complete failure.

*Id.* at 894, 198 S.W.2d at 1003 (emphasis added). *See Walker v. McCuen*, 318 Ark. 508, 886 S.W.2d 577 (1994); *Casteel v. McCuen*, 310 Ark. 568, 838 S.W.2d 364 (1992); *Czech v. Munson*, 280 Ark. 219, 656 S.W.2d 696 (1983); *Ellis v. Hall*, 219 Ark. 869, 245 S.W.2d 223 (1952) (*per curiam*) (Secretary of State authorized to allow a thirty-day extension for securing additional signatures where the

---

[1] Other thorny questions may surface as a result of the majority's *sub silentio* assumption about the meaning of the word "petition" as used in the amendment. For example, would the people's right of referendum begin when the "petition" is filed or when the signatures are filed? *See Walker v. McCuen*, 318 Ark. 508, 886 S.W.2d 577 (1994). In determining the required number of signatures under Amendment 7, will the "last preceding general election" for the office of governor be the election before the filing of the "petition" or the election before the signatures are filed?

petition as originally filed contained the required number of signatures, but investigation showed that 268 signatures were not valid). Furthermore, Amendment 7 provides that a petition may be circulated in "parts" to gather the number of signatures required. We have held that these "parts," which are sometimes loosely referred to as "petitions," are considered to be only one petition. *Czech v. Baer,* 283 Ark. 457, 677 S.W.2d 833 (1984). Likewise, in *Scott v. McCuen, supra,* we stated:

> Our jurisdiction attaches only after the petition is declared sufficient and that determination must be of the sufficiency of both the title and the signatures.

*Scott v. McCuen,* 289 Ark. 41, 45, 709 S.W.2d 77, 79 (1986). This explicit statement of the limits of our jurisdiction under Amendment 7, which we followed four years later in *Finn v. McCuen, supra,* clearly supports the view that a "petition" as that term is used in the amendment must contain at the time of filing the required number of signatures.

The majority attempts to support its holding on the constitutionality of Act 877 by citing our decision in *Washburn v. Hall,* 225 Ark. 868, 286 S.W.2d 494 (1956), for the proposition that "early review of the petition's text by the attorney and by this court did not impede the Amendment 7 process." It nonetheless acknowledges that our decision in that case "was not couched in terms of the jurisdiction of this court to review."[2] In fact, the *Washburn* case presents no more help in the resolution of this case than it did when this court decided *Finn v. McCuen, supra:*

> The issue in the *Washburn* case was whether the refusal of the secretary of state to certify a referendum was proper in view of the fact that it had no popular name or ballot title. We were not concerned with the provisions in Act 195 for relief in this court in the event the attorney general refused to act. We only held that the secretary of state's refusal to certify the petition was proper and that the provisions of Act 195 for involving the attorney general in the secretary of state's decision as to the sufficiency of the petition was not a violation of Amendment 7. The case presents no help in the resolution of the case before us now. It certainly does not run contrary to our strong language and holding in the *Scott* case.

---

[2] It should be noted that the Washburn petition filed with the secretary of state contained a sufficient number of signatures. *Washburn v. Hall, supra.*

*Finn v. McCuen*, 303 Ark. 418, 425, 798 S.W.2d 34, 37 (1990).

All of the parties in this original action urge this court to approve Act 877's mechanism for an early judicial review of the text of a popular name and ballot title and the validity. of the proposed measure *before* the secretary of state has certified the sufficiency of the signatures required by Amendment 7. Just as the parties did in *Scott v. McCuen, supra,* the parties here want an early ruling on the "legal sufficiency" of the proposed measure and the proposed popular name and ballot title before they spend time and money securing thousands of signatures and publicizing the proposition. The majority correctly points out that in 1994 we encouraged the General Assembly "to make another attempt to establish an initiative and referendum procedure that will permit early resolution of [ballot title] issues." *Page v. McCuen,* 318 Ark. 342, 884 S.W.2d 951 (1994). The General Assembly responded in 1995 when it "tried to remedy this ballot title/popular name problem by a proposed Constitutional Amendment 3, but that proposed amendment was defeated at the November 5, 1996, General Election." *Stilley v. Priest,* 340 Ark. 259, 12 S.W.3d 189 (2000) *(per curiam).*[3]

In my view, the General Assembly's action in 1995 reflects a recognition that the *real* impediment to an early review of ballot titles and proposed measures prior to the collection of signatures is in the actual language and framework of Amendment 7. Our authority to review an initiative petition cannot be invoked until a "petition" containing the required number of signatures is filed with the secretary of state and she declares it to be sufficient or insufficient according to the power vested in her by Amendment 7:

> [T]he only authority given this court by Amendment 7 is the authority to review the secretary of state's certification of a "petition" which includes both the ballot title and the signatures.

*Finn v. McCuen,* 303 Ark. 418, 425, 798 S.W.2d 34, 37 (1990).

While Amendment 7 provides that "laws may be enacted to facilitate its operation," our original jurisdiction cannot be enlarged

---

[3] Mr. Stilley notes that proposed Constitutional Amendment 3 also sought to increase the number of constitutional amendments that could be proposed or submitted at the same time by the General Assembly under Article 19, Section 22 of the Arkansas Constitution.

by the legislature. *American Party v. Brandon*, 253 Ark. 123, 484 S.W.2d 881 (1972). That is exactly what section 4 of Act 877 of 1999 attempts to do. It purports to permit this court to review a "legal sufficiency" decision of the secretary of state with respect to a proposed measure and the ballot title portion of a petition. Pursuant to our holdings in *Scott v. McCuen, supra,* and *Finn v. McCuen, supra,* which should not be overturned, and the language of Amendment 7, I must conclude that section 4 of Act 877 constitutes nothing less than an unlawful and unconstitutional expansion of our jurisdiction.

The majority court's decision, under the rubric of "facilitating a smoother operation of Amendment 7," sanctions a legislative expansion of the court's authority granted by Amendment 7 for the express purpose of allowing this court to review the secretary of state's certification of something short of a "petition" containing both the ballot title and the signatures. As far as I can tell, this is the first time this court has ever reviewed a ballot title for a proposed measure before it has become a "petition" under Amendment 7 by the filing with the secretary of state of the required number of signatures.

For these reasons, I respectfully dissent.

THORNTON, J., joins in this dissent.