Robert WHITE, *et al.* *v.* Sharon PRIEST, *et al.*

02-284                                    73 S.W.3d 572

Supreme Court of Arkansas
Opinion delivered April 10, 2002

*Oscar Stilley*, for appellant.

No response.

Tom Glaze, Justice. On March 26, 2002, petitioner, Robert White, filed a petition captioned "An Original Action for Immediate Review and Such Other Relief to Which He May be Entitled under Amendment 7 to the Arkansas Constitution and its Implementing Act 877 of 1999 (codified at Ark. Code Ann. §§ 7-9-501 -507 (Repl. 2000)) and under Art. 16, § 13 of the Arkansas Constitution." In his petition, White names as respondents: all Supreme Court Justices, individually and in his or her official capacity; the Secretary of State, the Attorney General, and the State Treasurer, in their official capacities; the Department of Finance and Administration and Revenue Commissioners, in their official capacities; and named members of the State Board of Election Commissioners. In his petition, White sets out a number of counts which we consider in the order he presents them.

In his Count I, White requests this court to immediately review the Secretary of State's Declaration issued on February 27, 2002, whereby, after consulting with the Attorney General, she concluded the popular name and ballot title contained in an initiative petition submitted by White were fair and accurate and

facially valid. That initiative petition contains a proposed amendment to cap the salaries and regulate benefits of all state officers and employees who are paid in whole or in part from state or local taxes and fees, fines, penalties, tuition, or rents of state and local property. The salaries would be limited to $100,000 and the fringe benefits could not exceed the amount of 25% of the "direct salary." Before the Secretary of State issued the Declaration, the Attorney General had delivered an opinion, approving the popular name and ballot title of White's proposed amendment. The Declaration and Attorney General's opinion are marked Exhibits 1 and 2, respectively. Significantly, the Attorney General added a caveat in his opinion concerning particular hazards attendant to lengthy and complex proposals, such as the one submitted. In doing so, the Attorney General pointed out that, with any proposed amendment of considerable length and complexity such as White's, the sponsor runs the risk of a challenge and a finding by the court that the ballot is unacceptable, either because it is too "complex, detailed, and lengthy," or because it has "serious omissions."

■ Pursuant to Ark. Code Ann. § 7-9-506, White seeks review of the Secretary of State's Declaration and requests a declaratory judgment, finding White's ballot title and popular name sufficient. We grant review and direct this court's clerk to establish an expedited and appropriate briefing schedule for all parties, including amici curiae briefs, if any, permitted under Ark. Sup. Ct. R. 4-6. *See also Stilley v. Priest*, 341 Ark. 329, 16 S.W.3d 251 (2000).

Before leaving this count raised by White, we note his "motion for recusal" filed on March 28, 2002, wherein he requests the recusal of all supreme court justices. White asserts that, because of his proposed amendment limiting salaries and other benefits of public servants, including those of the justices, there is an appearance of bias on the part of the justices since they have a financial interest in this matter that requires our recusal. White asks us to direct the Governor to appoint disinterested judges who have no interest in higher taxes or high salaries for public servants, and who are not employed by the State or local government. White further claims each justice is a defendant from whom money damages are sought.

White's claim is rather unclear, but he seems to be suggesting that the justices could be liable for illegal exactions in the nature of salaries received that exceed caps or limitations under the amendment he proposes. In this respect, he generally requests injunctive relief as well.

White's claim is not only premature, it is also a claim for illegal exactions under Ark. Const. art. 16, § 13, and can only be commenced in a trial court; such a suit cannot be commenced in the appellate courts. *See Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988). White offers no brief, citation of authority, or argument to support his underlying argument for the justices' recusal, and we are unaware of any. Thus, this court is without original jurisdiction to hear any of the alleged claims for illegal exactions, and we dismiss Count 1.

Even if this court had original jurisdiction to initially consider a claim based on illegal exactions, the justices still would be empowered and duty bound to consider and decide these issues White strives to raise. Under Ark. Code of Judicial Conduct Canon 3(E)(1), while a judge must disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, the "Rule of Necessity" may override the rule of disqualification. For example, a judge might be required to participate in judicial review of a judicial salary statute. *See* Commentary to Canon 3(E)(1); *see also* Richard E. Flamm, *Judicial Disqualification: Recusal and Disqualification of Judges* § 20.2.2, at 591-592 (1996) (the Rule of Necessity is most likely to be invoked in situations where the filing of a suit whose resolution will directly affect the pecuniary well-being of judges as a whole, such as a suit seeking to increase judicial pay or retirement benefits); and Jeffery M. Shaman *et al., Judicial Conduct and Ethics* § 4.03, at 111-112 (3d ed. 2000).

In addition, we point out that Ark. Const. art. 7, § 9, in pertinent part, provides that when all or any of the justices are disqualified, the Governor must immediately commission the requisite number of men (or women) learned in the law to sit in the trial or determination of the supreme court's cases. In other words, this court does not direct who the Governor commissions

to perform his duties as a justice, like White suggests in his motion. More important, it is significant to mention that in the review White seeks here, the Governor would have the same or similar conflict White asserts the justices have, since there are countless employees in the executive branch of government that are paid salaries exceeding the $100,000 cap established under White's proposal. *See* Acts 4, 234, 1238, 1612, 1636, 1638, 1668, 1669 of 2001. Here, each justice, individually, rejects White's motion to recuse under the "rule of necessity."

In his Count 2, White requests us to review the Secretary of State's Declaration issued on February 27, 2002, whereby, after consulting with the Attorney General, she declared the popular name and ballot title on White's Arkansas Prison System Amendment proposal to be fair and accurate and facially valid. As was the case in the "salary cap" proposal, the Attorney General's opinion issued on January 20, 2002, added a caveat that particular hazards exist because of the length and complexity of White's ballot title. We grant review, and as with the "salary cap" proposal, we direct the clerk to establish an appropriate briefing schedule for all parties, including amici curiae briefs authorized, if any, under Ark. Sup. Ct. R. 4-6.

In Count 3, White's petition asks this court to enroll as law the proposed Used Car Tax of 2000 which this court, in *Kurrus v. Priest*, 342 Ark. 434, 29 S.W.3d 669 (2000), found insufficient because of the proposed amendment's misleading popular name and ballot title and because it conflicted with the Arkansas and United States Constitutions. As a part of our holding in *Kurrus*, we ordered that the Used Car Tax Amendment of 2000 not be placed on that year's General Election ballot, or alternatively, that any votes cast on that amendment not be counted.

Here, White merely raises the same arguments we thoroughly considered in *Kurrus*. Offering no new argument or citations, and totally ignoring the holding in *Kurrus*, White states the following:

> The [*Kurris*] Supreme Court based its order denying the validity of the amendment upon *two flagrantly unlawful considerations*:

(1) That the ballot title was defective even though the ballot title plainly and certainly would have been sufficient if it had been approved by the General Assembly for an amendment proposed by same and

(2) that the amendment violated a substantive provision of the Constitution of Arkansas. The court also *claimed* that the petition violated the United States Constitution, but this *claim* was so clearly baseless that the court could not cite a single federal case of any kind in support of its contention. (Our emphasis.)

White further reflects his disagreement with the *Kurrus* decision saying, "The Arkansas Supreme Court [in *Kurrus*] was wholly without jurisdiction to declare a ballot title defective based upon *its own created 'law'* which created an extremely harsh test for citizens' initiatives, while using a test for measures referred by the Arkansas General Assembly that is so lenient that nothing has ever failed the test." He adds (again without new argument) that "any attempt to strike an initiative petition upon a claimed possible illegality of the substantive provisions of the initiative before the vote is had, canvassed, and certified, is a *nullity.*" (Our emphasis.)

White's present counsel, Oscar Stilley, is well aware that this court dealt with these two foregoing issues in *Kurrus*, and that Stilley also continued his argument in a petition for rehearing in that case. His arguments were rejected on both occasions. We also point out that, even before *Kurrus*, this court in *Thiel v. Priest*, 342 Ark. 292, 28 S.W.3d 296 (2000), stated very clearly the rationale behind why initiatives by the General Assembly and by the voters are constitutionally different and permissible. *See also Kurrus*, at 440.

It is not this court's duty to review issues it has already considered or decided when no good reason has been shown to do so. We are, once again, troubled by Mr. Stilley's unwillingness to recognize precedent and his attempt to breathe life into decisions he previously lost. *See Stilley v. Hubbs*, 344 Ark. 1, 40 S.W.3d 209 (2001). We are always ready to reconsider the court's prior precedents if proper argument demonstrates that reconsideration and review are needed. *See Shannon v. Wilson*, 329 Ark. 143, 151, 947 S.W.2d 349, 353 (1997). That is not the case at hand. Thus, as provided under Ark. R. App. P.—Civ. 11,

we are compelled to order Mr. Stilley to show cause in writing why a sanction should not be imposed against him. Such writing shall be no later than seven days after the date of this opinion. The Attorney General and other state or constitutional parties Mr. Stilley named in this matter may have four days to respond from the date Stilley files his writing. *Id.* With regard to the bare and untimely allegations White attempts to assert in Count 3 of his petition, we dismiss that count in toto because those allegations, as explained above, have been previously decided by this court.

Before leaving the Count 3 matter, we note White's mention that this court is not at liberty to fault the work (opinion) of the Attorney General after the Attorney General had approved the proper name and ballot title of the Used Car Tax of 2000, but White cites no authority to support his contention. The authority, of course, is wholly contrary to such an assertion. *See Arkansas Prof'l Bail Bondsman Lic. Bd. v. Oudin*, 348 Ark. 48, 69 S.W.3d 865; *Bailey v. McCuen*, 318 Ark. 227, 884 S.W.2d 938 (1994); *City of Fayetteville v. Edmark*, 304 Ark. 179, 801 S.W.2d 275 (1990).

Also, we note White's reference in Count 3 to his theory that, since the Used Car Tax amendment should have been enrolled by the Secretary of State in 2000, the State Finance & Administration (contrary to the text of the 2000 proposal) collected illegal taxes. White claims he and other taxpayers should be entitled to refunds from these illegal exactions. Again, even if Count 3 stated a viable cause of action, that alleged illegal exaction claim would have been required to be commenced in trial court under Ark. Const. art. 16, § 13. *See Franz*, 296 Ark. 181, 754 S.W.2d 839. This court has no original jurisdiction to decide the matter, and we dismiss it.

In White's Count 4, he again questions the *Kurrus* decision, but limits this part of his argument to say that this court erred in invalidating the Used Car Tax of 2000 on the basis of constitutional provisions of the State and U. S. Constitutions which prohibit the impairment of contracts. Of course, this court indeed held that the proposed amendment violated such constitutional prohibitions, even though three justices did register different

views on this issue. White expands his allegations in Count 3 to point out that, if his theory is correct that Ark. Const. amend. 43 cannot supersede provisions of Ark. Const. amend. 9, then any compensation the supreme court justices here received that exceeded their starting salaries would constitute illegal exactions.[1] In turn, White uses this theory as the basis to ask all justices to recuse, alleging they have a pecuniary interest involved. As we have already stated, any illegal exaction action must be commenced in trial court, and we have no original jurisdiction over this matter. Therefore, we dismiss it. But as we have explained above, the "rule of necessity" compels that we not recuse in this case even if this court had original jurisdiction to decide this matter. *See* Commentary to Canon 3(E)(1).

Next, White requests in his Count 5 that "this court enjoin and prohibit all defendants from the use of any standard more restrictive that the 'manifest fraud' standard used for General Assembly ballot titles." Once again, this allegation and prayer for relief was considered in the *Thiel* and *Kurrus* cases. Thus, we dismiss this claim for the reasons already discussed above.

In Count 6, White's allegations are particularly confusing, but he refers to an Attorney General Opinion No. 2001-391, marked "exhibit 6," which, among other things, sets out the popular name and ballot title of a proposed amendment that would abolish all ad valorem taxes on personal property. The Attorney General's opinion, dated January 11, 2002, rejected the popular name and ballot title due to ambiguities in the "text" of the proposed measure. The Attorney General instructed Mr. Stilley to "redesign" the proposed measure and ballot title and resub-

---

[1] White cites Ark. Const. amend. 9, § 2 for the proposition that the amendment prohibits supreme court justices from receiving compensation greater than that authorized at the beginning of the term to which the judge was elected. He then refers to Amendment 43 which he says permits the increase of salaries of justices of the supreme court during the term for which the justice has been elected. White concludes that, if *Kurrus* is the law, then Amendment 43 is plainly and facially unconstitutional as violating or conflicting with an existing substantive provision of the Arkansas Constitution. Of course, Amendments 9 and 43 are not in issue here, but we would merely observe at this point that the Publishers Notes to Amendment 43 suggest Amendment 43 probably supersedes Amendment 9.

mit it. Apparently, Stilley did not do so. Also, it appears the proposal with ballot and popular name was not sent to the Secretary of State for Declaration, as is provided under Act 877 of 1999. *See* Ark. Const. amend. 7, Ark. Code Ann. §§ 7-9-505 and 7-9-107(d) and (e)(B)(2) (If the Attorney General or Secretary of State refuse to act or if the sponsors feel aggrieved by his acts, in such premises, the sponsors may, by petition, apply to the supreme court for proper relief.). Because the Secretary of State has not determined the sufficiency of this ad valorem tax proposal, this court has no jurisdiction to consider this matter and, therefore, we dismiss this count in White's petition.

In Count 7, White submits for review another proposed measure which is an amendment to abolish taxes on used goods. As was the situation with the ad valorem tax prohibition in Count 6 above, the Attorney General rejected Mr. Stilley's request to resubmit his proposal, which the Attorney General rejected as ambiguous. The Secretary of State has not made her determination as to sufficiency or issued a Declaration. We dismiss this count, since we do not have jurisdiction to review it for the reasons stated in dismissing Count 6.

In conclusion, White submits a Count 10 (*sic*) which lists nine paragraphs under the caption, "Petition Sponsors Have the Right to Cure, Including Cure of the Language of the Ballot Title and Popular Name."[2] Six of the paragraphs include what only can be described as general legal principles that White claims to be true, without providing the court with citations of authority or argument. For example, after White proceeds by saying he incorporates all general allegations in the other counts, he states the following:

> 100. The legitimate interest of the state in the regulation of speech in the form of ballot titles, namely the prevention of fraud however denominated, is not advanced by the refusal to permit improvements, corrections, or changes to ballot titles, popular names, or the text of the measure, as to matters which do not

---

[2] White sets out Counts 1 through 7, omits stating Counts 8 and 9, but continues with Count 10, which apparently should be numbered Count 8.

affect the general meaning and purpose of the amendment, after suit is filed by a challenger.

101. To the extent that the state has an interest extending beyond fraud prevention, to the provision of greater detail, accuracy, completeness, or concision to the voters, that interest is best protected by a modification of the language of the ballot title, popular name, or text of the measure, as to matters that do not materially alter the purpose and effect of the measure, rather than the striking of the ballot title and popular name. This would be the alternative least restrictive of free speech rights and thus meeting constitutional muster for restrictions on core political speech.

102. Ballot titles and popular names are core political speech.

103. The text of citizen initiated measures is core political speech.

104. The ballot titles and popular names of all statewide initiatives are approved by the Arkansas Attorney General. In some cases the ballot title is a ballot title substituted by the Attorney General. The Arkansas Supreme Court is not at liberty to fault the work of the Attorney General, a member of the Executive Branch, and therefore to punish the sponsor of any amendment or the electorate, by removing the amendment on the basis of a supposed error by the Attorney General.

105. Alternatively, the Attorney General, in issuing an opinion, becomes a guarantor of the ballot title and popular name, and thus any subsequent striking of the amendment renders the officers of the State of Arkansas liable for any damages to the sponsors or the taxpayers for the failure to properly certify the rectitude of the ballot title and the matter which it describes, thus rendering the officers of the state, and especially the Treasurer of the State, Commissioner of Revenues, and Director of the Department of Finance and Adminsitration liable to repay all damages suffered by the sponsor or by taxpayers as a result of the defective ballot title opinion.

At the end of his Count 10, White *demands* an oral argument.

After reading the foregoing list, we can only conclude no further consideration and reflection is needed on this court's part other than the issues we already decided in Counts 1 through 7, except to say this court will later consider granting an oral argument when a timely request is made under Ark. Sup. Ct. R. 5-

1(a), and this court decides the request meets the requirements of that rule.

In sum, this court grants review of White's Counts 1 and 2, and dismisses his Counts 3, 4, 5, 6, and 7. An expedited briefing schedule shall be made regarding the counts granted and on review. The court issues a show-cause order for White's counsel, Oscar Stilley, to show in writing why a sanction under Rule 11 should not be imposed against him.