The Honorable Charles L. Ormond State Representative 1500 View Street Morrilton, AR 72110-3725
Dear Representative Ormond:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed constitutional amendment:
 Popular Name AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO ESTABLISH AN ARKANSAS OWNED AND OPERATED CORPORATION CONCERNING CHARITABLE BINGO, LOTTERIES, AND WAGERING AS AN INDEPENDENT PUBLIC CORPORATION
 Ballot Title PROPOSING AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO ESTABLISH THE ARKANSAS CORPORATION ON LOTTERIES AND WAGERING AS AN INDEPENDENT PUBLIC CORPORATION; TO LICENSE CHARITABLE BINGO; TO PROVIDE FOR A STATE-WIDE LOTTERY; TO AUTHORIZE THE CORPORATION TO CONDUCT WAGERING GAMES IN FACILITIES OWNED AND OPERATED BY THE CORPORATION OR MAY ENTER INTO A CONTRACT WITH ANY PERSON TO OPERATE WAGERING GAMES; TO LEGALIZE SHIPMENTS OF GAMBLING DEVICES INTO STATE; TO REQUIRE APPROVAL BY THE VOTERS OF A COUNTY BEFORE WAGERING GAMES MAY BE CONDUCTED IN THE COUNTY; TO ESTABLISH WAGERING DISTRICTS CONSISTING OF COUNTIES THAT APPROVE THE CONDUCT OF WAGERING GAMES; TO ESTABLISH WAGERING DISTRICT ADVISORY COMMITTEES; TO PROVIDE THAT A PORTION OF THE PROCEEDS FROM WAGERING GAMES, WAGERING FACILITIES, AND ANCILLARY OPERATIONS SHALL BE USED IN WAGERING DISTRICTS TO PROVIDE SUPPORT TO LOCAL TAXING UNITS, REBATES TO TAXPAYERS FOR A PORTION OF REAL PROPERTY TAXES PAID, AND REIMBURSEMENT TO RESIDENTS FOR A PORTION OF THEIR HEALTH INSURANCE PREMIUMS; TO AUTHORIZE AGREEMENTS BETWEEN THE CORPORATION AND THOROUGHBRED RACING TRACKS AND GREYHOUND RACING TRACKS FOR THE CONDUCT OF WAGERING GAMES BY THE TRACKS; TO AUTHORIZE THE CORPORATION TO CONDUCT PROMOTIONS THAT GIVE AWAY LODGING, FOOD, NON-ALCOHOLIC OR ALCOHOLIC BEVERAGES AT WAGERING FACILITIES; TO CONTRACT IN THE CORPORATE NAME, BORROW MONEY AND EXECUTE NEGOTIABLE EVIDENCES OF DEBT, TO PLEDGE REVENUE, AND TO ACQUIRE PROPERTY, TO AUTHORIZE THE CORPORATION TO EXERCISE THE POWER OF EMINENT DOMAIN; TO ESTABLISH THE OFFICERS OF THE CORPORATION AND THEIR TERMS OF OFFICE; TO ALLOW THE CORPORATION TO ESTABLISH THE SALARIES OF OFFICERS AND EMPLOYEES; TO NAME THE FIRST PRESIDENT OF THE CORPORATION; TO PROVIDE THAT SOVEREIGN IMMUNITY APPLIES TO THE CORPORATION; TO AMEND SECTION 14 OF ARTICLE 19
OF THE ARKANSAS CONSTITUTION TO CONFORM WITH THIS PROPOSED AMENDMENT; AND FOR OTHER PURPOSES.
You have asked that I review your proposed constitutional amendment, ballot title and popular name and give my "recommendations." I must note that the Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. This statutory function does not take the form of "recommendations." The law provides that the Attorney General may approve the popular name and ballot title as submitted, substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. Your measure leaves unclear certain fundamental issues that will be of concern to the voters regarding the ownership and governance of the proposed corporation. These issues will be detailed below. I must alert you to the fact that this list is not exhaustive; rather, these are the ambiguities that are most prominent in the measure. Furthermore, a number of additions or changes to your ballot title will be necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. §7-9-107(b).
I refer to the following ambiguities:
 1. Your proposed amendment creates an "Arkansas Corporation on Lotteries and Wagering" which is described as an "independent public corporation." Proposed amendment, § 2(a). Your proposed amendment states that it" shall be subject to the laws applicable to a nonprofit corporation except to the extent the laws are in conflict" with the amendment. § 2(b). Your proposed popular name describes the corporation as "Arkansas owned" although nothing in the text of your amendment addresses the "ownership" of the corporation. Uncertainty persists as to the exact nature of the corporation. The voters may be uncertain as to what laws and regulations will govern the corporation in light of its announced hybrid public/private nature. The corporation is given a number of public characteristics, but the amendment provides for its governance under the nonprofit corporation laws. Will there be articles of incorporation and by-laws of the nonprofit corporation? Will there be "members" of the nonprofit corporation? Although the corporation is made subject to Arkansas Constitution, art. 5, § 20 (sovereign immunity); is given the power of eminent domain and the authority to receive appropriated funds, it is unclear to what extent the corporation would be treated as a state entity and thus subject to state laws regarding: 1) the treatment of employees (pensions, salaries, etc); 2) applicable audit requirements; 3) the promulgation of rules under the Administrative Procedures Act and public accountability under the Freedom of Information Act; and 4) any host of other state regulatory provisions. These uncertainties are compounded by the ambiguity addressed below regarding the extent of the General Assembly's power to make laws regarding the operation of the corporation.
 2. A common deficiency in drafting proposed constitutional amendments relating to lotteries and gambling is a failure to adequately detail the extent of the power of the General Assembly under the proposed amendment. Your proposed amendment mentions the General Assembly in only one Section, in Section 13(c)(2) and (e), which respectively, give the General Assembly the power to increase the percentage of the net revenue proceeds allocated for local taxing units and for real property tax rebates and exempt revenues of the corporation received through operations from the necessity of an appropriation of the General Assembly. As I stated in Op. Att'y. Gen. 2004-112, in addressing a similar deficiency:
 There is now no mention in your amendment of the regulatory power of the General Assembly over bingo, raffles and gambling, except for the statement that the" State, or an agency of the state thereof, shall be authorized to audit, calculate and determine which deductions are operational costs necessary to the operation of gambling . . ." (Section 1 (9)), and the prohibition in Section 1(11) against any "license, fee or permit of any kind by any name. . . ." An ambiguity arises in light of the remaining language as to the extent of the regulatory power of the General Assembly. Does the State, the General Assembly, or any political subdivision possess any regulatory authority outside of the stated authority to audit, calculate and determine which deductions are operational costs? As my predecessor stated with regard to a similar issue: "It is generally held . . . as a canon of state constitutional construction, that a state constitution is not a grant of enumerated powers to a state general assembly, but is rather a limitation on the power of a general assembly to act. See, e.g., Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100 (1979); Jones v. Mears, 256 Ark. 825, 510 S.W.2d 857 (1974); and Berry v. Gordon, 237 Ark. 547, 376 S.W.2d 279 (1964). That is, the legislature has absolute power to legislate in all fields unless it is expressly or by necessary implication denied that power by the Constitution. Id. A question therefore arises as to whether your proposed amendment by `necessary implication' denies the General Assembly the power to pass any laws pertaining to the proposed casinos. If it does, this important fact must be reflected in the ballot title for your measure. Cf. Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990)[1] (where proposed amendment authorizing a lottery and bingo was silent as to checks and balances of other branches of government, and Supreme Court interpreted proposed amendment as prohibiting such checks and balances, that fact must be disclosed in ballot title)." Op. Att'y. Gen. 99-176. As I stated in a previous rejection of one of your submissions, the "General Assembly's power to regulate the activities proposed in your amendment is a core concept that will give the voters serious ground for reflection. It must be made clear prior to summarization of your amendment in a ballot title for voters. Op. Att'y. Gen. 2004-061. Merely omitting any reference to this important point will not suffice."
Op. Att'y. Gen. 2004-112, quoting Ops. Att'y. Gen. 99-176 and 2004-061.
 Similarly, your proposed amendment concerning the Arkansas Corporation on Lotteries and Wagering, because it mentions the General Assembly only briefly and refers to the corporation as an "independent public corporation," gives rise to an ambiguity as to the extent of the power of the General Assembly over the corporation. If the intention is to deny the General Assembly any regulatory authority other than as stated, this fact must be made clear in your amendment and expressly revealed to the voters in the ballot title for your measure. The denial of such authority, however, may raise additional uncertainties concerning your measure, including for example, the precise method or authority for prescribing the qualifications, filing requirements, campaign restrictions and election mechanics for directors, or the method or authority for determining the exact amount of any individual property tax rebates and the applicable duties of state or county officials regarding the tax rebates.
 3. Additional ambiguities exist regarding the directors of the corporation and the initial president thereof. First, your proposed amendment does not state whether the directors of the corporation (excluding the president), will or may receive compensation or who would set such compensation. This fact may give the voters" serious ground for reflection." Second, your proposed amendment is unclear as to the term of service of the initial president of the corporation. Your proposed amendment names the first president of the corporation, Mr. Charles Ormond, to take office January 1, 2007. See Section 5 ("Temporary provisions"). Section 5 of your measure, however, does not set any express term of service. Although Section 3(a)(2) of your measure, governing directors generally, states that the "directors elected from congressional districts shall select one (1) additional director who shall serve as president" and Section 3(c) provides that the director "selected as president shall serve at the pleasure of the directors elected by congressional district" and Section 3(d) states that the "president may serve as a director for nor more than (10) years," these provisions of Section 3 do not appear to govern the initial, temporary appointees addressed in Section 5. I am uncertain, therefore, as to the term of service of the first, specifically-named president. Third, the name of the individual appointed as the first president (Mr. Charles Ormond), is not mentioned expressly in your proposed ballot title and I cannot substitute a ballot title including this name absent clarification of the procedure for appointing a first president in the event the named individual is unable to take office. A similar question was addressed in Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990) as follows: "Here, the ballot title does not reveal the fact that the proposed amendment actually names the persons to occupy the initial board positions. The proposed amendment provides that Walker, Batch, Rice, and the now-deceased Simmons are to be four of the five members of the board. To say the least, it is remarkable, if not unique, in our experience to find initial board members, either the quick or the dead, named in a proposal for a constitutional amendment creating a powerful arm of state government." Id. at 427. The Arkansas Supreme Court struck down the ballot title for failing to mention the names of the four directors. Because it struck the measure from the ballot, the court found it unnecessary to address "the question raised about the validity of signatures counted after Mr. Simmons's death." Your proposed measure, similarly, actually names an individual to take office as the first president of the corporation. This fact must be expressly revealed to the voters in a ballot title for your measure. I cannot substitute a ballot title for this measure including your name, however, without an ambiguity persisting as to what procedure will ensue in the event you die or otherwise become unable to assume office in the period intervening certification of your measure's ballot title and the election on this measure.
 4. Ambiguities exist as to the liability of the state for debts incurred by the corporation. Section 12 of your proposal empowers the corporation to borrow money and issue negotiable evidences of debt, including notes and bonds. It also authorizes the corporation to pledge its revenues, "including the income from operations" and mortgage its property to secure the payment of the money borrowed. Although I assume that you do not intend any of these evidences of indebtedness to be an obligation of the State of Arkansas, your proposal does not expressly address this point. This fact may give the voters serious ground for reflection.
 5. An ambiguity arises as to the authority of the corporation to regulate non pari-mutuel activity of existing thoroughbred or greyhound racing tracks. Your proposed amendment authorizes the corporation to enter into agreements with such entities to conduct wagering games at the track "in addition to the track's pari-mutuel wagering operations
that are authorized by law." Section 8 (c)(1)(A) (emphasis added). In addition, Section 8 (c)(3) of your measure provides that: "The corporation shall not have authority to regulate pari-mutuel wagering
at thoroughbred racing tracks or greyhound racing tracks." (Emphasis added). Act 1151 of 2005, however, recently passed by the General Assembly, authorizes additional forms of electronic games of skill by racetrack franchisees, and these games are not required to be pari-mutuel. See Act 1151, § 1, adding A.C.A. § 23-113-603(b)(2). Some uncertainty exists, therefore, as to whether your proposed amendment would authorize the Arkansas Corporation on Lotteries and Wagering to regulate such non-pari-mutuel activity. In addition, the interaction between your proposed amendment and Act 1151 is unclear in other respects because Act 1151 authorizes additional forms of electronic games of skill only after a local election (see Act 1151, § 1, A.C.A. § 23-113-201(a)(2)(A)(i)), whereas your proposed amendment appears to authorize wagering games at racetracks without the necessity of approval of the county in question or the voters therein. Proposed amendment, section 8 (c)(1)(B).
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely
MIKE BEEBE Attorney General
MB/cyh
[1] Although a procedural holding in the Finn case was later overruled in Stilley v. Priest, 341 Ark. 329, 16 S.W.3d 251(2000) (see also, Wardv. Priest, 350 Ark. 345, 86 S.W.3d 884 (2002)), the conclusions regarding the sufficiency of the ballot title remain viable.