521 S.E.2d 276

**Valorie CORBETT, individually, and as Personal Representative of the Estate of Tommy L. Corbett, Appellant,**

v.

**The CITY OF MYRTLE BEACH, SC, and Johns Beach Service of Myrtle Beach, Inc.,**

**of whom Johns Beach Service of Myrtle Beach, Inc., is Respondent.**

No. 3028.

Court of Appeals of South Carolina.

Heard March 10, 1999.

Decided July 26, 1999.

602

L. Joel Chastain, of Ness, Motley, Loadholt, Richardson & Poole, of Barnwell; Desa Ballard, of Desa Ballard, P.A., of West Columbia; and David E. Belton, of Columbia, for appellant.

Frank H. DuRant, of DuRant & Martin, of Myrtle Beach, for respondent.

HUFF, Judge:

Valorie Corbett, Individually, and as Personal Representative of the Estate of Tommy L. Corbett, initiated this tort action against Johns Beach Service of Myrtle Beach (Johns Beach) after her husband drowned in the Atlantic Ocean. The trial court granted the defendant's motion for summary judgment. Corbett appeals. We affirm in part and reverse in part.

## FACTS/PROCEDURAL HISTORY

Mrs. Corbett and her husband, Tommy L. Corbett, visited Myrtle Beach, South Carolina, on July 17, 1992. Mr. Corbett rented a floatation device from a lifeguard and swam in the ocean for about one and one-half hours. During this time, Mrs. Corbett returned to the hotel room because she was not feeling well. While Mr. Corbett was in the ocean he either fell or was knocked off the floatation device and subsequently drowned. Three lifeguards attempted to rescue him but were unsuccessful. Mrs. Corbett returned from the hotel room and saw her husband lying on the shore with EMS personnel attempting to resuscitate him.

The City of Myrtle Beach owned the land on the beachfront where Mr. Corbett entered the water. The State of South Carolina owns or controls the waters of the Atlantic Ocean. By virtue of a state statute, the City was granted police powers over the area extending one mile form the coastline of the Myrtle Beach city limits. The public was not charged an admission fee to use the beachfront or the ocean.

On the date of Mr. Corbett's drowning, the City of Myrtle Beach had a franchise agreement with Johns Beach Service.

Johns Beach was required to hire lifeguards for certain areas along the beachfront. Johns Beach utilized a "preventive lifeguarding" or "dual purpose" lifeguarding system. Under this system, the lifeguard's primary goal was water safety. They continually scanned the area in an attempt to keep swimmers in reasonably safe swimming areas designated by the City. The lifeguards also responded to persons in distress. The lifeguards simultaneously performed other duties including: renting beach furniture, cleaning the beach, informing the public about various city ordinances, performing first aid and assisting the public with safety matters.

A Myrtle Beach city ordinance, in effect on the date of the incident, made it a crime to swim beyond certain depths and distances from the shore. Under this ordinance, the guards were responsible for keeping swimmers within fifty yards of the coastline and in water that did not go over their head. The Johns Beach lifeguards did not have the authority to arrest members of the public for ordinance violations. Instead, the lifeguards were required to contact the police to enforce the ordinance if the swimmers failed to heed the lifeguard's instructions.

Mrs. Corbett individually, and as Personal Representative of Mr. Corbett's estate, filed two civil actions for the wrongful death of her husband. The complaints were eventually consolidated. Approximately one year later Mrs. Corbett filed a third complaint for negligent infliction of emotional distress as a bystander (a *Kinard* claim). Johns Beach pled the defense of the South Carolina Recreational Use Statute and moved for summary judgment. The trial court granted summary judgment to Johns Beach and denied Mrs. Corbett's Motion to Reconsider.[1] Mrs. Corbett appeals.

## LAW/ANALYSIS

### Standard of Review

Summary judgment is appropriate when it is clear there is no genuine issue as to any material fact and the moving party

---

1. The City of Myrtle Beach was also a named defendant. The City asserted the Recreational Use Statute as a defense. The trial court granted summary judgment in favor of the City, and it was not appealed.

is entitled to judgment as a matter of law. Rule 56(c), SCRCP. Summary judgment should be granted when plain, palpable, and undisputable facts exist on which reasonable minds cannot differ. *Trico Surveying, Inc. v. Godley Auction Co.*, 314 S.C. 542, 431 S.E.2d 565 (1993). To determine whether an issue of fact exists, the court must view the evidence and all its inferences in a light most favorable to the nonmoving party. *Koester v. Carolina Rental Ctr., Inc.*, 313 S.C. 490, 443 S.E.2d 392 (1994).

## Discussion

### I.

■■■ The Limitation on Liability of Landowners Act, commonly known as the Recreational Use Statute, was enacted by our legislature to "encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." S.C.Code Ann. § 27–3–10 (1991). "Landowners owe 'no duty of care to keep the premises safe' for recreational users and need not 'give any warning of a dangerous condition, use, structure or activity' on the property." *Brooks v. Northwood Little League, Inc.*, 327 S.C. 400, 403, 489 S.E.2d 647, 648 (Ct.App.1997) (citing S.C.Code Ann. § 27–3–30 (1991)). The statute defines owner as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." § 27–3–20(b).

Mrs. Corbett contends the trial court erred in applying the Recreational Use Statute to Johns Beach. She argues Johns Beach does not fall within the statute's definition of owner because it was not an "occupant" and was not "in control of the premises." We agree.

■■■ Our "primary rule of statutory construction is to give statutes their plain and ordinary meaning where the statute's language is unambiguous." *Brooks*, 327 S.C. at 406, 489 S.E.2d at 650 (citing *Adkins v. Varn*, 312 S.C. 188, 191, 439 S.E.2d 822, 824 (1993)). "In construing statutory language, the statute must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect." *TNS Mills, Inc. v. South Carolina Dep't of Revenue*, 331 S.C. 611, 620, 503 S.E.2d 471,

476 (1998). Because the statute is in derogation of the common law, it must be strictly construed. *Watson v. Sellers,* 299 S.C. 426, 385 S.E.2d 369 (Ct.App.1989). We must "ascertain and effectuate the legislative intent wherever possible." *South Carolina Dep't of Social Servs. v. Forrester,* 282 S.C. 512, 516, 320 S.E.2d 39, 42 (Ct.App.1984). "Legislative intent is best determined by examining the language of the statute itself." *Gambrell v. Travelers Ins. Cos.,* 280 S.C. 69, 71, 310 S.E.2d 814, 816 (1983). *See Truesdale v. South Carolina Highway Dep't,* 264 S.C. 221, 213 S.E.2d 740 (1975) (all rules of statutory construction are for the purpose of ascertaining the legislative intent as expressed in the statute).

South Carolina has not addressed the issue of when a defendant is "an occupant or person in control of the premises." However, a review of other jurisdictions supports the conclusion that Johns Beach is not entitled to protection under the statute.

In *Labree v. Millville Manufacturing, Inc.,* 195 N.J.Super. 575, 481 A.2d 286 (1984), the court, construing a similar statute, held the use of the word "occupant" in the statute showed an intent to provide immunity for an entity with a degree of permanence, not merely one who is using the property. *See also Boland v. Nevada Rock & Sand Co.,* 111 Nev. 608, 894 P.2d 988 (1995) (finding company that had mined property for twenty-five years had requisite "degree of permanence," citing *Labree*); *Tennyson v. Plum Creek Timber Co.,* 73 Wash.App. 550, 872 P.2d 524 (1994) (adopting the *Labree* standard). In the case before us, the franchise agreement provided that Johns Beach would operate its business only between April 15 and September 30 of each year between the hours of 8 a.m. and 5 p.m. These terms do not satisfy the *Labree* standard.

In *Ward v. State,* 181 Ariz. 359, 890 P.2d 1144 (1995), the court found that Arizona's Recreational Use Statute's grant of immunity should run only to those with the power to admit or deny entry onto land. In *Ward,* there was an agreement between the U.S. Forest Service and the state of Arizona (defendant) which allowed the defendant to operate a program on certain land. In determining whether the defendant was an "occupant," the court noted the need to construe the

statute strictly because of its limits on common-law liability. The court analyzed the statute's legislative history and determined the legislature intended to encourage property owners and others to open their lands to recreational users.

The *Ward* court found, under the agreement, the landowner did not delegate to the defendant the power to control entry to the land. Holding that "[a] grant of immunity to the [defendant] would not serve the underlying purpose of the recreational use statute," the court concluded the defendant was not an occupant under the act. *Id.*, 890 P.2d at 1147. While discussing other jurisdictions' decisions, the *Ward* court emphasized that "[t]he relationship of an entity to the premises, not the length and stability of its presence, should primarily determine whether the entity 'occupies' the premises" under the statute. *Id.*, 890 P.2d at 1148. *See also Tennyson v. Plum Creek Timber Co.*, 73 Wash.App. 550, 872 P.2d 524 (1994) (holding that extending immunity to contractors under the act would not further the purpose behind the act); *Adams v. Rochester Gas & Elec. Corp.*, 191 A.D.2d 960, 594 N.Y.S.2d 501 (1993) (denying defendant immunity when agreement with landowner did not provide defendant with authority to exclude others from using the property or to open it for recreational use).

■ We now turn to the case before us. "The plain language of our recreational use statute . . . grants immunity to landowners." *Brooks,* 327 S.C. at 407, 489 S.E.2d at 650. The statutory definition of landowner is, in pertinent part, an "occupant" or one "in control of the premises." S.C.Code Ann. § 27–3–20(b). The purpose of the statute, as declared by our legislature, is to prompt owners of land to make their land available for recreational use by the public. *Brooks,* 327 S.C. at 407, 489 S.E.2d at 650; S.C.Code Ann. § 27–3–10.

After consideration of the above statutory sections and case law, we find that Johns Beach is not an owner under the statute. The franchise agreement reserves to the City of Myrtle Beach considerable control over Johns Beach's operations, going so far as to schedule lunch breaks for lifeguards and provide specifications for the guard towers. The agreement makes the type, use and operators of beach service vehicle equipment subject to approval by the City. No signs

are allowed on the beach unless approved by the City, and the City determines the location of the lifeguard stands. Johns Beach must remove fifty percent of its unrented chairs and umbrellas from the beach between 1:30 p.m. and 2:30 p.m. each day. Specified openings at the end of each street and alleyway must be left open.

Further, Johns Beach does not have the power to make the beach available for recreational use to the public. They do not provide public access to the beach, and cannot prevent public access to the beach. The Johns Beach lifeguards do not have the power to arrest beach goers. The language of the Recreational Use Statute does not evince an intent to shield defendants such as Johns Beach from liability. Providing immunity to Johns Beach under the statute would not further the legislative purpose of opening up "land and water areas . . . to the public" as announced in Section 27–3–10.

Based on standards developed in other jurisdictions with similar statutory provisions, we find Johns Beach is not entitled to the immunity provided by the Recreational Use Statute. We reverse the trial judge's grant of summary judgment to Johns Beach under the statute.

## II.

Mrs. Corbett contends the trial court erred in concluding that the negligence of Johns Beach was not a proximate cause of Mr. Corbett's death. She argues that but for the negligence of Johns' lifeguard, Mr. Corbett's death would not have occurred. The court found Johns Beach "may have had a better chance of rescuing the plaintiff had he been looking directly at the plaintiff to the exclusion of all other persons and duties, but this is not the standard of care due and owing from the defendant Johns to the plaintiff herein."

To prevail in a negligence action, the plaintiff must show three essential elements: 1) a duty of care owed by the defendant to the plaintiff; 2) a breach of that duty by a negligent act or omission; and 3) damage proximately caused by a breach of duty. *Vinson v. Hartley*, 324 S.C. 389, 477 S.E.2d 715 (Ct.App.1996). A plaintiff may not maintain an action in negligence if there is no legal duty of care owed by defendant to plaintiff: "Without a duty, there is no actionable

negligence." *Bishop v. South Carolina Dep't of Mental Health,* 331 S.C. 79, 86, 502 S.E.2d 78, 81 (1998). An affirmative legal duty to act exists if created by statute, contract, relationship, status, property interest, or some other special circumstance. *Rayfield v. South Carolina Dep't of Corrections,* 297 S.C. 95, 374 S.E.2d 910 (Ct.App.1988). *See also Kershaw Motor Co. v. Southern Ry. Co.,* 136 S.C. 377, 134 S.E. 377 (1926).

The grant of summary judgment is proper only in those cases where it is clear further inquiry into the facts is not desirable to clarify the application of the law to the facts presented. *Anthony v. Padmar,* 307 S.C. 503, 415 S.E.2d 828 (Ct.App.1992). Here, we find the grant of summary judgment to Johns Beach on the basis of a lack of proximate cause was inappropriate. The facts of the case warrant further development to determine what duty, if any, Johns Beach owed to Mr. Corbett. *See Dorman v. Allstate Ins. Co.,* 332 S.C. 176, 504 S.E.2d 127 (Ct.App.1998) (further development of facts necessary to clarify application of statute); *Hurst v. Sandy,* 329 S.C. 471, 494 S.E.2d 847 (Ct.App.1997) (issue of fact as to duty of defendant to plaintiff); *cf. Rice v. School Dist. of Fairfield,* 317 S.C. 87, 452 S.E.2d 352 (Ct.App.1994) (summary judgment appropriate because further development of facts could not create a duty on part of defendant).

### III.

Mrs. Corbett further submits the trial court erred in dismissing her *Kinard* action pursuant to Rule 12(b)(8), SCRCP. We disagree.

Mrs. Corbett brought the *Kinard* claim in her individual capacity. The consolidated wrongful death and survivorship actions were brought in Mrs. Corbett's individual capacity and in her capacity as the Personal Representative of her husband's estate. Hence, the *Kinard* claim involves the same parties and is based upon the same facts and circumstances as the first two civil actions. We find the trial court properly dismissed the complaint pursuant to Rule 12(b)(8), SCRCP.

Finally, Mrs. Corbett argues the *Kinard* claim may not have actually been dismissed because the trial court used equivocal language in its court order: "[a]lternatively the

Plaintiff's third civil action, 95–CP–26–1922 should be dismissed pursuant to Rule 12(b)(8)." We disagree. We find the court order does not resurrect and validate the *Kinard* action. The practical effect of what the court did was to dismiss on all grounds.

For the foregoing reasons, the trial court order granting summary judgment in favor of Johns Beach is hereby

**AFFIRMED in part and REVERSED in part.**

CURETON and STILWELL, JJ., concur.