2010 Ark. 244

**Brandon WOODROME, Petitioner,**

v.

**Charlie DANIELS, in his Official
Capacity as Secretary of
State, Respondent,**

v.

**Randy Zook, Dennis Jungmeyer, Randy
Wilbourn, and Ray C. Dillon, Individ-
ually, and on behalf of Arkansans to
Protect Police, Libraries, Education
& Services (Apples), Intervenors.**

No. 10–243.

Supreme Court of Arkansas.

May 20, 2010.

Stewart Law Firm, by: Chris H. Stewart, Little Rock, for petitioner.

Dustin McDaniel, Att'y Gen., by: Mark N. Ohrenberger, Ass't Att'y Gen., for respondent.

Friday, Eldredge & Clark LLP, Little Rock, by: Elizabeth Robben Murray, for intervenors/cross-petitioners.

David A. Curran, James B. DePriest, and Eric B. Estes, Office of the Ark. Att'y Gen. Dep't of Pub. Protection, for amicus curiae Pub. Protection Dep't of the Ark. Att'y Gen.'s Office.

ELANA CUNNINGHAM WILLS, Justice.

In this original action, petitioner, Brandon Woodrome, seeks this court's review of the Secretary of State's determination regarding the legal sufficiency of a statewide initiative petition. The petition, sponsored by the "Arkansas Progressive Group," [1] bears the popular name "A Constitutional Amendment to Repeal All State Taxes and Establish A Flat Rate Sales Tax." On December 21, 2009, the Arkansas Progressive Group submitted its proposed popular name and ballot title to the Attorney General for review and certification pursuant to Arkansas Code Anno-

tated section 7–9–107 (Repl.2007). The Attorney General responded on January 7, 2010 with Opinion No. 2009–212, substituting and certifying a popular name and ballot title for the proposed amendment under section 7–9–107(b). As revised, the Attorney General certified the following popular name and ballot title:

### Popular Name

A Constitutional Amendment to Repeal All State Taxes and Establish a Flat Rate Sales Tax

### Ballot Title

AN AMENDMENT PROVIDING THAT, EFFECTIVE JULY 1, 2012, ALL EXISTING TAXES LEVIED BY THE STATE'S GENERAL ASSEMBLY ARE REPEALED AND A FLAT RATE SALES TAX SHALL BE ENACTED. ALL REVENUES GENERATED BY ANY TAX LEVIED BY THE GENERAL ASSEMBLY WILL CEASE ON JULY 1, 2012, INCLUDING REVENUES FROM ALL CAPITAL GAINS TAXES, ALL CORPORATE TAXES, ALL INCOME TAXES, ALL PAYROLL TAXES, AND ALL REAL ESTATE TRANSFER TAXES. TO PROVIDE A SOURCE OF STATE REVENUE, THE GENERAL ASSEMBLY SHALL, BEFORE JULY 1, 2012, DETERMINE THE RATE OF THE FLAT RATE SALES TAX. THE GENERAL ASSEMBLY SHALL DETERMINE THE DISTRIBUTION OF

---

1. Although the record before this court reflects actions by both attorney Chris Stewart (in submitting the measure for the certification of the Attorney General) and by petitioner Brandon Woodrome (in seeking the Secretary of State's review under Arkansas Code Annotated section 7–9–503), documents related to the latter action refer to the measure as being sponsored by the Arkansas Progressive Group. Stewart agreed at oral argument that the Arkansas Progressive Group is the sponsor of this amendment, and petitioner Woodrome is one of the incorporators of the Arkansas Progressive Group.

THE FLAT RATE SALES TAX. THE RATE OF THE SALES TAX MAY IMPACT CURRENT REVENUES AND STATE SERVICES. THE GENERAL ASSEMBLY MAY CHANGE THE INITIAL RATE OF THE FLAT RATE SALES TAX BY A VOTE OF AT LEAST THREE–FOURTHS OF THE MEMBERS ELECTED TO EACH HOUSE. EACH CITIZEN WILL BE PAID A MONTHLY CITIZEN PAYMENT. THE MONTHLY PAYMENT WILL BE DETERMINED BY THE FOLLOWING FORMULA: THE RATE OF THE TAX MULTIPLIED BY THE VALUE OF THE POVERTY LEVEL DIVIDED BY TWELVE. THE ANNUAL POVERTY LEVEL SHALL BE DETERMINED BY THE DEPARTMENT OF HEALTH AND HUMAN SERVICES. THE FLAT RATE SALES TAX SHALL NOT INHIBIT OR AFFECT THE POWER OF A COUNTY OR MUNICIPALITY TO LEVY AND COLLECT LOCAL TAXES. NO FLAT RATE SALES TAX IS IMPOSED ON: A TAXABLE PROPERTY OR SERVICE PURCHASED IN THE STATE FOR A BUSINESS PURPOSE; A TAXABLE PROPERTY OR SERVICE PURCHASED IN THE STATE FOR AN INVESTMENT PURPOSE AND HELD EXCLUSIVELY FOR AN INVESTMENT PURPOSE; A TAXABLE PROPERTY THAT HAS BEEN TAXED AT THE INITIAL RETAIL LEVEL AND IS TRANSFERRED BY A SUBSEQUENT SALE; EDUCATION TUITION FOR PRIMARY, SECONDARY, OR POST-SECONDARY LEVEL EDUCATION AND JOB–RELATED TRAINING COURSE; AND SERVICES REQUIRED BY FEDERAL, STATE OR LOCAL LAWS TO BE PERFORMED BY A PERSON.

In substituting and certifying the popular name and ballot title, however, the Attorney General added a cautionary note, in light of the complexity and "far-reaching effects" of the proposed amendment. He emphasized the direct correlation between the complexity of a proposed amendment and its susceptibility to a successful ballot title challenge.

After the Attorney General's certification, on January 25, 2010, Woodrome filed a petition for a determination of the legal sufficiency of the initiative petition with the Secretary of State's office pursuant to Arkansas Code Annotated section 7–9–503(a)(1) (Repl.2007). The Secretary of State requested a consultation on the popular name and ballot title from the Attorney General, pursuant to section 7–9–503(b) (Repl.2007), to determine whether the popular name and ballot title were "fair and complete" and whether the measure, if approved, would violate constitutional, statutory, or regulatory provisions or would otherwise be invalid. In a letter to the Secretary of State dated February 23, 2010, the Attorney General noted that although he had previously rejected two versions of the popular name and ballot title "due to ambiguities in the text of the proposed amendment," he substituted and certified the popular name and ballot title for the measure in Opinion 2009–212. The Attorney General stated that the name and title were "as 'fair and complete' as they can be, based upon the text of the measure submitted." Regarding the measure's constitutionality, the Attorney General's letter warned that it was "difficult to analyze the substantive constitutionality of a proposed measure without a full-blown adversary proceeding." Moreover, because the measure represented a "substantial revision of state tax laws," it was "difficult to determine whether it

might violate the United States Constitution without the development of facts as to the implementation of the measure[.]" [2]

The next day, on February 24, 2010, the Secretary of State sent a letter to Chris Stewart, Woodrome's counsel, stating that he agreed with the Attorney General that the proposed popular name and ballot title were "fair and complete," although the Secretary noted that he shared the Attorney General's concerns and reservations about the assessment of the ballot title. In addition, the Secretary agreed that the proposed amendment would not violate the State Constitution, nor did it appear to be facially unconstitutional under the United States Constitution.

Woodrome brought the instant original action in this court on March 5, 2010, filing a petition for review of the Secretary of State's determination. *See* Ark.Code Ann. § 7–9–505 (Repl.2007). On April 6, 2010, Randy Zook, Dennis Jungmeyer, Randy Wilbourn, and Ray Dillon, individually and on behalf of Arkansans to Protect Police, Libraries, Education & Services (APPLES) filed a motion to intervene in the proceedings.[3] After the motion to intervene was granted, APPLES filed a response to Woodrome's petition as well as a cross-petition on April 16, 2010, asserting that Woodrome was entitled to seek neither the Secretary of State's declaration under section 7–9–503 nor this court's review of that declaration under section 7–9–505. In addition, the cross-petitioners sought this court's review of the Secretary of State's declaration, alleging that the popular name and ballot title were not fair and complete and that the measure was in violation of the Arkansas and United States Constitutions.

Before reaching the merits of Woodrome's petition before this court, we must address the question raised by APPLES as to whether Woodrome has standing to bring the instant petition for review. APPLES points out that, in previous decisions, this court has questioned whether the sponsor of a measure may petition the Secretary of State for a determination of the legal sufficiency of a petition under section 7–9–503. *See Stilley v. Priest,* 341 Ark. 329, 339, 16 S.W.3d 251, 257 (2000) (*Stilley II* ) (noting, but not addressing, the question of whether Act 877 might lead to "friendly" actions to "garner the court's approval of the text of proposed amendments"); *Ward v. Priest,* 350 Ark. 345, 377, 86 S.W.3d 884, 907 (2002) (Brown, J., dissenting) (noting the distinction in Act 877 between the "sponsor" of a measure and a "petitioner" and opining that it would be "absurd" for sponsors to challenge the legal sufficiency of their own ballot titles).

APPLES also expresses concern with the fact that Act 877, as codified at Arkansas Code Annotated sections 7–9–501 to –506 (Repl.2007), contains no requirement that a petition filed with the Secretary of State's office be publicized, nor does it provide a mechanism by which any interested individual or group, other than the petitioner and the sponsor, may be invited to intervene or join in the review process.

---

**2.** The Attorney General noted that, because the measure was a proposed amendment to the Arkansas Constitution, if adopted, it necessarily would not violate the Arkansas Constitution.

**3.** Also on April 6, 2010, APPLES filed its own petition for determination of legal sufficiency with the Secretary of State's office. The Secretary of State had thirty days in which to act on the petition; that thirty days expired on May 6. At oral argument, held on May 13, 2010, counsel for APPLES represented that they had received some documentation from the Secretary of State's office, although it was agreed that the matter was outside of the record of the instant action.

APPLES urges that an interpretation of Act 877 that permits "friendly" challenges by sponsors of proposed ballot measures could result in "sham" suits that could "collaterally estop or bar challenges to a proposed ballot measure by other taxpayers."

This court has not squarely addressed the precise issue raised by APPLES in this case. Our statutes require, prior to any initiative or referendum petition being circulated for signatures, that the Attorney General certify a popular name and ballot title for the measure. ⌊7See Ark.Code Ann. § 7–9–107 (Repl.2007). The separate subchapter at issue herein, Arkansas Code Annotated sections 7–9–501 to –506, was adopted "to provide for the timely and expeditious review of the legal sufficiency of initiative petitions by the Supreme Court." Ark.Code Ann. § 7–9–501 (Repl. 2007). It applies to "all initiative petitions submitted to the Attorney General after" the effective date of the Act. Ark.Code Ann. § 7–9–506 (Repl.2007). Section 7–9–503 provides for declarations of sufficiency by the Secretary of State and reads as follows:

(a)(1) Any Arkansas taxpayer and voter may submit a written petition to the Secretary of State requesting the determination of legal sufficiency of statewide initiative petitions.

(2) The petitioner shall notify the sponsor of the measure of the petition for determination by certified mail on the date that it is submitted to the Secretary of State.

(b) Within thirty (30) days after receipt of the petition for determination, the Secretary of State shall decide and declare, after consultation with the Attorney General, questions on one (1) or both of the following issues:

(1) Whether the popular name and ballot title of the measure are fair and complete; and

(2) Whether the measure, if subsequently approved by the electorate, would violate any state constitutional provision or any federal constitutional, statutory, or regulatory provision or would be invalid for any other reason.

(c) The declaration shall be in writing and shall be mailed to the petitioner and the sponsor of the measure by certified mail on the date that it is issued.

(d) The scope of review authorized by this subchapter shall be strictly limited to the questions referred to in subsection (b) of this section and shall not include questions regarding the sufficiency or validity of signatures on the initiative petition.

⌊8Section 7–9–505 then provides that "[t]he petitioner, the sponsor of the measure, and any Arkansas taxpayer and voter shall have the immediate right to petition the Supreme Court to review the determination of the Secretary of State regarding the sufficiency of the initiative petition."

■ The cardinal rule of statutory construction is to effectuate the legislative will. *Bank of Eureka Springs v. Evans,* 353 Ark. 438, 109 S.W.3d 672 (2003); *Ozark Gas Pipeline v. Ark. Pub. Serv. Comm'n,* 342 Ark. 591, 29 S.W.3d 730 (2000). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Bank of Eureka Springs, supra.* We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Id.*

When a statute is ambiguous, however, we must interpret it according to the legislative intent. *Id.; Barclay v. First Paris Holding Co.,* 344 Ark. 711, 42 S.W.3d 496 (2001). Our review becomes an examination of the whole act. We reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. We also look to the legislative history, the language, and the subject matter involved. *Barclay, supra.* We have also held that literal meaning yields to legislative intent if the literal meaning leads to absurd consequences contrary to legislative intent. *See, e.g., Burford Distrib., Inc. v. Starr,* 341 Ark. 914, 20 S.W.3d 363 (2000).

In this instance, section 7–9–503(a) is unclear whether a sponsor of an initiative petition may seek a determination of the measure's legal sufficiency. Section 7–9–503(a) provides that "[a]ny Arkansas taxpayer and voter" may submit a request for a declaration from the Secretary of State. Ark.Code Ann. § 7–9–503(a)(1). While this may, at first glance, appear broad enough to include the sponsor, the very next subsection seems to draw a distinction between the individual who submits the petition and the sponsor of the measure: "The *petitioner* shall notify the *sponsor* of the measure of the petition[.]" § 7–9–503(a)(2) (emphasis added). Moreover, section 7–9–503(c) also appears to contemplate that the petitioner and the sponsor are not the same person when it states that the Secretary of State's declaration "shall be mailed to *the petitioner and the sponsor* of the measure." (Emphasis added.) In addition, section 7–9–505 provides a right of review of the Secretary of State's decision to "[t]he petitioner, the

sponsor of the measure, and any Arkansas taxpayer and voter." This provision clearly includes the sponsor, whereas section 7–9–503(a)(1) does not.

Justice Brown's dissenting opinion in *Ward v. Priest,* 350 Ark. 345, 86 S.W.3d 884, noted this distinction, writing as follows:

> There is also the point that sponsors ... would not be challenging the legal sufficiency of their own ballot titles and amendments. That would be absurd. Such an interpretation flies in the face of the very language of Act 877, which takes pains to distinguish between the *sponsor* of the initiative and the *petitioner* challenging the initiative. This distinction is made in two places in Act 877.

*Ward,* 350 Ark. at 377–78, 86 S.W.3d at 907 (Brown, J., dissenting) (emphasis in original).[4]

Nonetheless, the statute does not explicitly declare, one way or the other, whether a sponsor may bring a petition for declaration of legal sufficiency. We conclude that the internal contradictions within section 7–9–503 and the more inclusive language of section 7–9–505 render the statute ambiguous. As noted above, when a statute is ambiguous, this court must interpret it according to the legislative intent. In the case of Act 877, the General Assembly's intent is spelled out in section 1 of the Act, codified at Arkansas Code Annotated section 7–9–501 (Repl.2007): "The purpose of this act is to provide for the timely and expeditious review of the legal sufficiency of initiative petitions by the Arkansas Supreme Court." In addition, the emergency clause to the Act provides as follows:

---

**4.** *Ward v. Priest* was a split opinion that involved a challenge to the legal sufficiency of a petition after the requisite number of signatures had been collected and certified, not a petition for review under Act 877. It was unnecessary for the majority to address the precise issue raised in the dissent.

It is hereby found and determined by the Eighty-second General Assembly that the current procedures for review of the sufficiency of initiative petitions is insufficient; that in matters affecting amendments to the Constitution and measures to be voted on by the people, there should be a certainty with reference to the amendment or measure affected; and that this act is immediately necessary to provide for a timely and expeditious review of the sufficiency of initiative petitions.

Acts of 1999, No. 877, § 10.

Act 877 vests this court with jurisdiction to consider the sufficiency of popular names and ballot titles prior to the collection of signatures, and this court has held this to be constitutional. *See Stilley II*, 341 Ark. at 334, 16 S.W.3d at 254 (stating that, while "Amendment 7 does contemplate filing the initiative petition with the requisite signatures with the Secretary of State for a sufficiency determination, at no point does it preclude an earlier review of the text of the popular name and ballot title or the validity of the proposed amendment").

*Stilley II* further noted that Amendment 7 specifically provides that "laws may be enacted to facilitate its operation." The court stated that the early review of a ballot title and popular name by the Secretary of State and by this court "would have the salutary effect of facilitating a smoother operation of Amendment 7," which "has as its ultimate purpose the establishment of a procedure by which the people can adopt legislative measures." *Stilley II*, 341 Ark. at 335, 16 S.W.3d at 255.

The language of Amendment 7, which Act 877 is intended to facilitate, supports the notion that a challenge pursuant to Act 877 needs to be brought by a "petitioner" with an adverse interest—or at least one who is not the sponsor.[5] Amendment 7 speaks of a "challenge" to the sufficiency of a petition, and notes that, "[i]n the event of legal proceedings *to prevent giving legal effect to any petition upon any grounds*, the burden of proof shall be upon the *person or persons attacking the validity of the petition*." Ark. Const. art. 5, § 1 (emphasis added). The sponsor of a measure would hardly be likely to be found in the position of seeking to "prevent giving legal effect" to the measure he or she proposed, nor would the sponsor want to "attack[ ] the validity" of the measure.

As noted by Justice Brown's dissent in *Ward v. Priest, supra*, the statute "takes pains" to distinguish between the petitioner and the sponsor and uses markedly different language in section 7–9–503 and section 7–9–505. If the statute is construed to allow a sponsor to petition for a declaration of legal sufficiency, then this court could conceivably be put in a position of having to decide the sufficiency of a ballot title without the benefit of any countervailing argument.[6]

---

5. As noted above in footnote 1, there is no factual dispute in this case that the petition for review *was sought by the sponsor of the* instant measure.

6. In the few cases in which we have reached the merits of a challenge under Act 877, the petition for review to this court was brought by a party who was unaffiliated with the sponsor. In *Roberts v. Priest*, 341 Ark. 813, 20 S.W.3d 376 (2000), this court reviewed a petition filed by APPLES challenging the suffi-

ciency of a popular name and ballot title that had been sponsored by a group called the "Arkansas Taxpayers Rights Association." *Roberts*, 341 Ark. at 820, 20 S.W.3d at 380. In *Stilley II*, an individual sought review of a popular name and ballot title that was sponsored by the Arkansas Casino Corporation, and this court concluded that it was a "bona fide challenge" under Act 877. *Stilley II*, 341 Ark. at 340, 16 S.W.3d at 257.

We conclude that a petition for a declaration of sufficiency pursuant to Act 877 may not be brought by the sponsor of the measure for which review is sought. The purpose of Act 877 is to facilitate the operation of Amendment 7 by providing for the timely and expeditious review of the legal sufficiency of initiative petitions. Without the existence of adverse parties, any review under the statute would amount to little more than an advisory opinion. *See Block v. Allen,* 241 Ark. 970, 980, 411 S.W.2d 21, 27 (1967) ("[I]mportant questions [should] be pounded out on the anvil of advocacy by persons whose interests are |13vitally real, not academic, with all interested parties before the court."). We therefore hold that petitioner Woodrome lacked standing to bring the instant petition either before the Secretary of State or this court. As no declaration was sought by any party with standing, the Secretary of State lacked any statutory basis for rendering its declaration; thus, there is no valid declaration of sufficiency pursuant to section 7–9–503. Accordingly, as requested by APPLES, we dismiss Woodrome's petition for review and vacate the Secretary of State's declaration of sufficiency.

We are left, however, with APPLES's cross-petition. Having vacated the Secretary of State's declaration of sufficiency for the above-stated reasons, there remains nothing from which APPLES may seek review. We therefore dismiss the cross-petition as well.[7]

---

7. As noted above, APPLES sought its own declaration of sufficiency of the instant popular name and ballot title from the Secretary of State. As of the date of this opinion, APPLES has not filed a petition for review of that declaration with this court pursuant to section 7–9–505.