# SUPREME COURT OF ARKANSAS

No. CV–13–955

| | |
|---|---|
| THERESA ROEDER, AS THE ADMINISTRATRIX OF THE ESTATE OF ESTHER KAY ROEDER, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF ESTHER KAY ROEDER; TARA ROEDER, AS THE ADMINISTRATRIX OF THE ESTATE OF BRUCE WAYNE ROEDER, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF BRUCE WAYNE ROEDER; AND TARA ROEDER, AS THE ADMINISTRATRIX OF THE ESTATE OF DEBORAH BUSBY ROEDER, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF DEBORAH BUSBY ROEDER<br><br>       PETITIONERS<br>V.<br><br>UNITED STATES OF AMERICA; JAMES S. WATSON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; GLORIA MAPLES CHRISMER, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; NORMAL L. WAGONER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; JAMES B. KOZIK, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND JOHN DOES 1-5, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY<br><br>       RESPONDENTS | Opinion Delivered April 10, 2014<br><br><br>CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF ARKANSAS, HOT SPRINGS DIVISION<br><br><br>HON. SUSAN O. HICKEY, UNITED STATES DISTRICT COURT JUDGE<br><br><br>CERTIFIED QUESTION ANSWERED. |

**JIM HANNAH, Chief Justice**

SLIP OPINION

This case involves a question of law certified to this court by the United States District Court for the Western District of Arkansas, Hot Springs Division, in accordance with Arkansas Supreme Court Rule 6-8 (2013) and accepted by this court on November 7, 2013. *See Roeder v. United States*, 2013 Ark. 451, ___ S.W.3d ___. The certified question is:

> Whether "malicious" conduct, under Arkansas Code Annotated section 18-11-307(1) (Repl. 2003), includes conduct in reckless disregard of the consequences from which malice may be inferred.

We answer in the affirmative.

The following facts were provided in the federal district court's certification order. This is one of eleven similar cases filed in federal district court[1] arising from the deaths of campers who died in a tragic flood incident in June 2010 at the Albert Pike Recreation Area ("APRA").[2] Some of these campers were camping in Loop D, which is a section of the APRA designated for RV use. Others were camping upstream from Loop D, along Road 512 in the Ouachita National Forest. In the early morning hours of June 11, 2010, heavy rainfall in Montgomery County caused a rapid rise in the Little Missouri River and its tributaries. A flash flood occurred when the river overran its banks into Loop D and the surrounding areas of the APRA. According to the United States Geological Service, the Little Missouri River rose over twenty feet between 2:00 a.m. and 5:30 a.m. Twenty people perished in the flood.

---

[1]The court stayed the other ten cases pending the resolution of the certified question.

[2]The Albert Pike Recreation Area is public land managed by the United States through its Forest Service, which is an agency of the United States Department of Agriculture.

Plaintiffs, Theresa Roeder, as the Administratrix of the Estate of Esther Kay Roeder, deceased, and on behalf of the wrongful death beneficiaries of Esther Kay Roeder; Tara Roeder, as the Administratrix of the Estate of Bruce Wayne Roeder, and on behalf of the wrongful death beneficiaries of Bruce Wayne Roeder; and Tara Roeder, as the Administratrix of the Estate of Deborah Busby Roeder, and on behalf of the wrongful death beneficiaries of Deborah Busby Roeder (collectively referred to as "Roeder"), filed suit in federal district court against defendants, the United States of America; James S. Watson, in his individual and official capacity; Gloria Maples Chrismer, in her individual and official capacity; Norman L. Wagoner, in his individual and official capacity; James B. Kozik, in his individual and official capacity; and John Does 1-5, in their individual and official capacity (collectively referred to as the "United States" or the "government"), pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, alleging that the negligence of the United States Forest Service caused the death of several campers who were camping in or near the APRA.[3] The United States asserted that subject-matter jurisdiction was lacking under the FTCA because the Arkansas Recreational Use Statute ("ARUS" or the "Act"), codified at Arkansas Code Annotated sections 18-11-301 to -307, provides the government with immunity. Generally, the ARUS provides immunity from liability to landowners who make their property available for the recreational use of others, except when (1) the landowner charges the person entering the land for recreational use, or (2) when the

[3]In *Roeder v. United States*, 6:12-cv-6120-SOH, Roeder filed claims against the United States of America and individual employees of the United States Forest Service. In the other ten cases, the United States of America is the only defendant.

SLIP OPINION

landowner maliciously fails to guard or warn against an ultrahazardous condition, structure, use, or activity actually known to the landowner to be dangerous. Ark. Code Ann. § 18-11-307. Roeder alleged that the United States was not immune from liability because it maliciously failed to warn or guard against an ultrahazardous condition of which it knew to be dangerous.

The meaning of "malicious" as used in the ARUS is at issue. Roeder contended that malicious conduct includes conduct committed in reckless disregard of the consequences, from which malice may be inferred. The United States contended that malicious conduct is limited to situations involving actual malice or a desire to harm another. Concluding that there was no controlling precedent interpreting the meaning of "malicious," as it is used in the ARUS, the federal district court certified to this court the question of whether "malicious" conduct, under Arkansas Code Annotated section 18-11-307(1) includes conduct in reckless disregard of the consequences from which malice may be inferred.

The certified question presents an issue of statutory construction. The cardinal rule of statutory construction is to effectuate the legislative will. *E.g.*, *Woodrome v. Daniels*, 2010 Ark. 244, at 8, 370 S.W.3d 190, 194. Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.*, 370 S.W.3d at 194. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.*, 370 S.W.3d at 194. We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Id.*,

370 S.W.3d at 194.

The word "malicious" is not defined in the ARUS. "Malicious," as defined by *Webster's Third New International Dictionary* 1367 (3d ed. 2002), means "given to, marked by, or arising from malice." *Black's Law Dictionary* defines "malice" as "[t]he intent, without justification or excuse, to commit a wrongful act," the "reckless disregard of the law or of a person's legal rights," and "[i]ll will; wickedness of heart." *Black's Law Dictionary* 1042 (9th ed. 2009). Thus, according to *Black's*, "malicious" conduct could include, as Roeder contends, conduct in reckless disregard of the consequences from which malice may be inferred, or, as the United States contends, "malicious" conduct could be limited to situations involving "actual malice" or a desire to harm another. Given that "malicious" is open to more than one construction, we conclude that Arkansas Code Annotated section 18-11-307(1) is ambiguous. *See, e.g.*, *Smith v. ConAgra Foods, Inc.*, 2013 Ark. 502, at 3, ___S.W.3d ___, ___ (stating that a statute is considered ambiguous if it is open to more than one construction). When a statute is ambiguous, we discern legislative intent by examining the whole act. *See, e.g.*, *Woodrome*, 2010 Ark. 244, at 8, 370 S.W.3d at 195. We reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.*, 370 S.W.3d at 195. We also look to the legislative history, the language, and the subject matter involved. *Id.*, 370 S.W.3d at 195.

The ARUS was first enacted in 1965 "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." Act of Feb. 12, 1965, No. 51, § 1, 1965 Ark.

Acts 165, 166 (originally codified at Ark. Stat. Ann. §§ 50-1101 to -1106). To achieve this purpose, the Act limited the liability of landowners in two ways. First, the Act established that, except as specifically recognized or provided,

> an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

Act of Feb. 12, 1965, No. 51, § 3, 1965 Ark. Acts 165, 166; currently codified at Ark. Code Ann. § 18-11-304. Second, the Act provided that, with some exceptions,

> an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:
>
> (a) Extend any assurance that the premises are safe for any purpose.
>
> (b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.
>
> (c) Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

Act of Feb. 12, 1965, No. 51, § 4, 1965 Ark. Acts 165, 167.[4]

As enacted in 1965, the ARUS contained two exceptions to immunity, one of which is relevant in this case. The Act provided:

---

[4]This provision was amended in 1983 to add that landowners who permit their property to be used for recreational purposes do not thereby:

> (d) assume responsibility for or incur liability for such injury to such person or property caused by any natural or artificial condition, structure or personal property on the land.

Act of Feb. 14, 1983, No. 168, § 3, 1983 Ark. Acts 225, 226; currently codified at Ark. Code Ann. § 18-11-305.

Nothing in this Act limits in any way liability which otherwise exists: (a) For *willful or malicious* failure to guard or warn against a dangerous condition, use, structure, or activity.

Act of Feb. 12, 1965, No. 51, § 6, 1965 Ark. Acts 165, 167 (emphasis added).

Then, in 1983, the General Assembly amended that exception, so that it now reads:

Nothing in this Act limits in any way liability which otherwise [exists]: (a) for *malicious, but not mere negligent*, failure to guard or warn against an ultra-hazardous condition, structure, personal property, use or activity actually known to such owner to be dangerous.

An Act to Amend Various Sections of Act 51 of 1965 [Ark. Stat. [Ann. §§] 50–1101 et seq.] to Clarify the Limitation on the Liability of Landowners for Allowing Persons to Use their Land; and for Other Purposes, Act of Feb. 14, 1983, No. 168, § 6, 1983 Ark. Acts 225, 227 (emphasis added); currently codified at Ark. Code Ann. § 18–11–307(1).[5]

The United States contends that the legislative history of the ARUS demonstrates that the General Assembly intended for malicious conduct to be limited to situations involving actual malice or a desire to harm another. In support of its argument, the government cites *Mandel v. United States*, 545 F. Supp. 907 (W.D. Ark. 1982), in which the United States District Court for the Western District of Arkansas construed the 1965 version of the ARUS.

---

[5]Thus, in the current version of the recreational-use statute, (1) malicious, but not mere negligent, failure to guard or warn invokes the exception, whereas in the previous version, "willful or malicious" failure to guard or warn invoked the exception; (2) an ultrahazardous condition, structure, personal property, use, or activity is required to invoke the exception, whereas in the previous version, a mere dangerous condition, structure, personal property, use, or activity invoked the exception; and (3) for invocation of the exception and resulting liability, the ultrahazardous condition, structure, personal property, or activity must be actually known to the owner to be dangerous, whereas in the previous version, there was no express statement that actual knowledge was required.



In that case, the plaintiff, Michael Mandel, sought a safe place to swim in the Buffalo National River, and a park ranger recommended an area known as Kyle's Landing. While swimming there, Mandel struck a submerged rock and broke his neck. Mandel brought an action against the National Park Service, the Boy Scouts of America, and the Insurance Company of North America, alleging that "employees of the National Park Service and the Boy Scouts of America knew that persons would use the facility with their permission, and failed to adequately warn divers of the presence of submerged rocks, and failed to properly mark or otherwise delineate safe diving areas." *Id*. at 909. The defendants argued that they were immune from liability pursuant to the ARUS because the evidence did not establish a willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity on their part.

The federal district court noted that it was "unaware of any Arkansas cases" interpreting the "willful or malicious" language in the ARUS, but explained that "the Arkansas courts have many times defined 'willful and wanton conduct.'" *Id*. at 912. Because the court could "think of no reason why 'willful and wanton' and 'willful misconduct' would . . . not be synonymous with 'willful or malicious,'" the court "infer[red] that the legislature intended 'willful and malicious' to have the same meaning as 'willful misconduct.'" *Id*. at 913. Therefore, it interpreted "willful or malicious" in the ARUS to mean that "the plaintiff must show (1) that defendants' conduct would naturally or probably result in injury; (2) that defendants knew or reasonably should have known that their conduct would so result in injury; and (3) that defendants continued such course of conduct in reckless disregard of the

consequences." *Id.*

As previously noted, the *Mandel* court construed the 1965 version of the ARUS, which provided no immunity from liability for *willful or malicious* failure to guard or warn against a dangerous condition, use, structure, or activity. The United States contends that the 1983 amendment, which, inter alia, removed the term "willful," was enacted in response to *Mandel.* The United States also contends that "willfulness" and "inferred malice" are synonymous under Arkansas law. Accordingly, the United States asserts that, because the legislature eliminated liability for a "willful . . . failure to guard or warn" as part of the 1983 amendment, then the legislature must have similarly eliminated liability for situations involving "inferred malice."

The government's argument would be more persuasive if, with respect to the duty of care, the General Assembly had changed the statute only by eliminating the words "willful or" before "malicious." But it did not. Rather, the General Assembly eliminated "willful or" before "malicious" *and then added* "but not mere negligent" after the term "malicious." Thus, we cannot read the term "malicious" in isolation; instead, we must construe it in the context of how it is used in the statute. This court has not construed the phrase "malicious, but not mere negligent," in the ARUS. But for many years, this court has referred to negligent conduct to explain situations in which when malice may be inferred. For example, we have discussed the distinction between malicious conduct and other types of conduct in the context of punitive damages, noting that negligence alone will not support an award of exemplary damages; rather, there must be conduct from which malice may be inferred. *See,*

*e.g.*, *Stein v. Lukas*, 308 Ark. 74, 78, 823 S.W.2d 832, 834 (1992) (stating that "malice can be inferred either from a conscious indifference to the consequences of one's actions or from a reckless disregard of those same consequences"); *Chicago, Rock Island & Pac. Ry. Co. v. Whitten*, 90 Ark. 462, 468, 119 S.W. 835, 837 (1909) (noting that "[m]ere negligence, indifference or careless disregard of the rights of others is not sufficient upon which to base a recovery for exemplary damages" and that "[t]he acts must be such as to evince malice"); *St. Louis, Iron Mountain & S. Ry. Co. v. Dysart*, 89 Ark. 261, 268, 116 S.W. 224, 226 (1909) (stating that "[n]egligence alone, however gross, is not sufficient, and that there must be an added element of intentional wrong, or, what is its equivalent, conscious indifference in the face of discovered peril, from which malice may be inferred"). We conclude that "but not mere negligent" functions as an explanatory phrase in the ARUS and that the legislature used those words to clarify what type of malice must be shown to preclude immunity from liability.

Moreover, as Roeder points out, if the legislature's intent was to require that only "actual malice" could preclude immunity under the ARUS, then it could have expressly done so, as it has done in other statutes when the intent to harm is required for liability. *See, e.g.*, Ark. Code Ann. § 5-26-502(e)(2) (Repl. 2013) (interference-with-court-ordered-custody statute providing immunity for petitioner unless the petitioner acted with "actual malice"); *id.* § 5-26-503(e)(2) (Repl. 2013) (interference-with-custody statute providing immunity for department unless department acted with "actual malice"); *id.* § 12-13-302(3) (Repl. 2009) (Arson Reporting-Immunity Act—no criminal or civil liability for action taken

10

under the Act unless "actual malice" is present); *id.* § 23-64-515(e) & (g) (Repl. 2012) (Proper Licensing Model Act—no civil liability for making a statement or providing information or failing to report unless "actual malice" is shown); *id.* § 23-66-506(b) (Repl. 2012) (fraudulent-insurance-acts-prevention statute stating that there is no civil liability for libel, slander, or any other cause of action unless statements were made with "actual malice"); *id.* § 23-81-814(d)(2)(A) (Supp. 2013) (Life Settlements Act—no liability for statements made in conjunction with the Act unless the statements were made with "actual malice").

Finally, there is another reason why, in the absence of explicit direction from the General Assembly, this court should construe the words "malicious, but not mere negligent" to include conduct in reckless disregard of the consequences from which malice may be inferred. Immunity under the ARUS is in derogation of the common law,[6] and any statute

---

[6] "[T]he common law has traditionally recognized three main categories of land entrants: trespassers, licensees, and invitees," and "Arkansas adheres to the common-law categories, although it codified the common-law trespasser principles in 1993." Harrison M. Pittman, *The Arkansas Recreational-Use Statute: Past, Present, and Future Application for Arkansas Landowners and Recreational Users of Land*, 60 Ark. L. Rev. 849, 855–56 (2008) (citing Ark. Code Ann. § 18-60-108). "A landowner owes a different duty of care to each category of land entrant." *Id.* at 856. A trespasser is one who comes upon land without the consent of the possessor, *see Coleman v. United Fence Co.*, 282 Ark. 344, 345, 668 S.W.2d 536, 537 (1984), and a landowner owes a trespasser the duty not to willfully or wantonly injure him after his presence is known. *Sw. Bell Tel. v. Davis*, 247 Ark. 381, 386, 445 S.W.2d 505, 507 (1969). A licensee is a person who comes upon the land with a privilege arising from the consent of the possessor, *see Coleman*, 282 Ark. at 345, 668 S.W.2d at 537, and a landowner owes a licensee the duty to refrain from injuring him or her through willful or wanton conduct. *Heigle v. Miller*, 332 Ark. 315, 321, 965 S.W.2d 116, 120 (1998). Where, however, the landowner discovers that a licensee is in peril, he or she has a duty of ordinary care to avoid injury to the licensee. *Id.*, 965 S.W.2d at 120. This duty takes the form of warning a licensee of hidden dangers if the licensee does not know or have reason to know of the conditions or risks involved. *Id.*, 965 S.W.2d at 120. An invitee is one induced to come onto property for the business benefit of the possessor, *see Coleman*, 282 Ark. at 345, 668 S.W.2d

SLIP OPINION

in derogation of the common law will be strictly construed. *E.g.*, *Thompson v. Bank of Am.*, 356 Ark. 576, 584, 157 S.W.3d 174, 179 (2004).[7] Strict construction requires that nothing be taken as intended that is not clearly expressed. *E.g.*, *Estate of Hull v. Union Pac. R.R. Co.*, 355 Ark. 547, 550, 141 S.W.3d 356, 358 (2004). In construing Nevada's recreational-use statute, the United States Court of Appeals for the Ninth Circuit stated,

> Since the recreational use statute is in derogation of common law rules of tort liability, we take care to avoid an overbroad interpretation of the statute that would afford immunity that was not intended. Consequently, *exceptions* to the statute . . . must be given the broadest reading that is within the fair intendment of the language used.

*Ducey v. United States*, 713 F.2d 504, 510 (9th Cir. 1983) (emphasis in original).

We agree with the reasoning of the *Ducey* court. In the instant case, if we give the malicious-but-not-mere-negligent exception to immunity the broadest reading that is within

---

at 537, and a landowner has a duty to exercise ordinary care to maintain the premises in a reasonably safe condition for the benefit of invitees. *Wilson v. J. Wade Quinn Co.*, 330 Ark. 306, 308, 952 S.W.2d 167, 169 (1997).

[7]The majority of courts interpreting recreational-use statutes have held that, because recreational-use statutes are in derogation of common law and because they limit the duties of landowners, they must be strictly construed. *See, e.g.*, *Ducey v. United States*, 713 F.2d 504 (9th Cir. 1983 ) (interpreting Nevada law); *Newman v. Sun Valley Crushing Co.*, 844 P.2d 623 (Ariz. Ct. App. 1992); *Conway v. Town of Wilton*, 680 A.2d 242 (Conn. 1996); *Drake by Drake v. Mitchell Cmty. Schs.*, 649 N.E.2d 1027 (Ind. 1995); *Monteville v. Terrebonne Parish Consol. Gov't*, 567 So. 2d 1097 (La. 1990); *Seideman by Seideman v. Cnty. of Monroe*, 585 N.Y.S.2d 909 (N.Y. App. Div. 1992); *Corbett v. City of Myrtle Beach, S.C.*, 521 S.E.2d 276 (S.C. Ct. App. 1999); *Kern v. City of Sioux Falls*, 560 N.W.2d 236 (S.D. 1997); *Matthews v. Elk Pioneer Days*, 824 P.2d 541 (Wash. Ct. App. 1992); *but see Hafford v. Great Northern Nekoosa Corp.*, 687 A.2d 967, 969 (Me. 1996) (noting that the immunity provision of Maine's recreational-use statute is construed broadly); *Verdoljak v. Mosinee Paper Corp.*, 547 N.W.2d 602, 607 (Wis. 1996) (noting that the court follows the legislative directive that Wisconsin's recreational-use statute "should be liberally construed in favor of the property owners to protect them from liability").

the fair intendment of the language used, then we must conclude that "malicious" conduct, under Arkansas Code Annotated section 18-11-307(1) includes conduct in reckless disregard of the consequences from which malice may be inferred.[8]

Certified question answered.

*Trammell Piazza Law Firm, PLLC*, by: *Melody H. Piazza* and *M. Chad Trammell*; and *Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*, for petitioners.

*Conner Eldridge* and *Deborah Fennel Groom*, U.S. Attorney's Office; and *Stuart F. Delery*, *Mark B. Stern*, and *Daniel J. Lenerz*, U.S. Department of Justice, for respondents.

*Richard Mays Law Firm, PLLC*, by: *Richard H. Mays*, for amicus curiae Aaron Sultz, as Special Administrator of the Estate of Eric Wayne Sultz, deceased, and on Behalf of the Statutory Wrongful Death Beneficiaries of Eric Wayne Sultz.

*Ayres, Warren, Shelton & Williams, LLC*, by: *Lee H. Ayres* and *Jason W. Poe*, for amici curiae Candice Smith et al. and Kerri Basinger et al.

---

[8]In *Carlton v. Cleburne County, Ark.*, 93 F.3d 505 (8th Cir. 1996), the United States Court of Appeals for the Eighth Circuit stated that an inferred-malice standard applies under the ARUS. *Id.* at 511 (citing *Stein v. Lukas*, 308 Ark. 74, 77, 823 S.W.2d 832, 834 (1992)). A federal court decision construing an Arkansas statute is not binding authority on this court; however, the decision is persuasive authority. *E.g.*, *Baldwin Co. v. Maner*, 224 Ark. 348, 349, 273 S.W.2d 28, 30 (1954).